# 22-368

**IN THE**

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

**FOR THE**

𝔖𝔢𝔠𝔬𝔫𝔡 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Petitioner-Appellee*,

v.

TERRAFORM LABS PTE, LTD. AND DO KWON,

*Respondents-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK (HON. J. PAUL OETKEN)

## BRIEF FOR RESPONDENTS-APPELLANTS

Douglas W. Henkin
*Counsel of Record*
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6832

*Counsel for Appellants Terraform Labs Pte, Ltd. and Do Kwon*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) and this Court's Rule 26.1(a), Terraform Labs Pte, Ltd. states that it has no parent corporation and no publicly traded corporation currently owns 10% or more of its stock.

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION.....................................................................6

QUESTIONS PRESENTED..................................................................................7

STATEMENT OF THE CASE...............................................................................7

      A.     Appellants' Voluntary Cooperation with the SEC Prior to Issuance of the Subpoenas ...................................................................................................8

      B.     The SEC's Attempted Service of the Subpoenas on Mr. Kwon ...........................11

      C.     District Court Proceedings .....................................................................12

      D.     This Appeal ...........................................................................................13

SUMMARY OF ARGUMENT ............................................................................14

STANDARD OF REVIEW .................................................................................16

ARGUMENT ......................................................................................................16

      I.     THE SEC VIOLATED RULE OF PRACTICE 150(b).......................................16

      II.     THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS ARE SUBJECT TO PERSONAL JURISDICTION............................................28

CONCLUSION....................................................................................................32

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) ...........................................................................................34

ADDENDUM .....................................................................................................35

CERTIFICATE OF SERVICE ...........................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appaloosa Inv., L.P.I. v. J.P. Morgan Secs., Inc.*,
   939 A.2d 257 (N.J. Super. Ct. App. Div. 2008) ................................................30

*Baxter v. United States*,
   No. 15-cv-4764, 2016 WL 468034 (N.D. Cal. Feb. 8, 2016)............................16

*Celi v. Canadian Occidental Petroleum Ltd.*,
   804 F. Supp. 465 (E.D.N.Y. 1992) ....................................................................29

*Conn. Bar Ass'n v. United States*,
   620 F.3d 81 (2d Cir. 2010) ................................................................................31

*F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*,
   636 F.2d 1300 (D.C. Cir. 1980).............................................................4, 23, 33

*Gao v. Barr*,
   968 F.3d 137 (2d Cir. 2020) ..............................................................................31

*Gilson v. Pittsburgh Forgings Co.*,
   284 F. Supp. 569 (S.D.N.Y. 1968) ....................................................................30

*Gorman v. Goldcorp, Inc.*,
   No. 07-CV-155, 2007 WL 4208982 (S.D. Ill. Nov. 26, 2007)..........................30

*IP Co. v. Gen. Commc'n, Inc.*,
   No. 07 Civ. 2372, 2007 WL 3254387 (S.D.N.Y. Oct. 31, 2007)......................30

*Law Debenture v. Maverick Tube Corp.*,
   No. 06 Civ 14320, 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008),
   *aff'd*, 595 F.3d 458 (2d Cir. 2010)....................................................................29

*Lever Bros. Co. v. United States*,
   981 F.2d 1330 (D.C. Cir. 1993)........................................................................22

*Mantello v. Hall*,
   947 F. Supp. 92 (S.D.N.Y. 1996) .................................................................30, 31

*Mario Valente Collezioni, Ltd. v Confezioni Semeraro Paolo, S.R.L.*,
    264 F.3d 32 (2d Cir. 2001) ..................................................................16

*McLane Co. v. E.E.O.C.*,
    137 S. Ct. 1159 (2017) ......................................................................15

*In the Matter of Mirror Protocol*
    (File No. HO-14164) ..................................................................*passim*

*Nursan Metalurji Endustrisi A.S. v. M/V "Torm Getrud,"*
    No. 07 Civ. 7687, 2009 WL 536059 (S.D.N.Y. Feb. 27, 2009) ........................29

*O'Connor v. Pierson*,
    426 F.3d 187 (2d Cir. 2005) ..............................................................25

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ............................................................................24

*RNR Enters., Inc. v. SEC*,
    122 F.3d 93 (2d Cir.1997) ..................................................................16

*Robbins v. Ring*,
    166 N.Y.S.2d 483 (Sup. Ct. N.Y. Cnty. 1957) ....................................29

*Santos v. State Farm Fire & Cas. Co.*,
    902 F.2d 1092 (2d Cir. 1990) ............................................................24

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) ..............................................................32

*Terraform Labs Pte Ltd. v. U.S. Sec. & Exch. Comm'n*,
    Case No. 21-cv-08701-JPO (S.D.N.Y.), ECF No. 1 .........................12

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) ............................................................................27

*United States v. Calderon*,
    944 F.3d 72 (2d Cir. 2019) ................................................................16

*United States v. Constr. Prod. Rsch., Inc.*,
    73 F.3d 464, 469 (2d Cir. 1996) ..........................................................6

iv

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016) .......................................................16, 25

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000) ......................................................29

*Wolfson v. Conolog Corp.,*
    No. 08 Civ. 3790, 2009 WL 465621 (S.D.N.Y. Feb. 25, 2009).......................29

*Zherka v. Ryan,*
    52 F. Supp. 3d 571 (S.D.N.Y. 2014) ...............................................24

**Statutes**

15 U.S.C. § 78u(c) .......................................................................6

28 U.S.C.A. § 530(B)(a) ................................................................27

28 U.S.C. § 1291 .......................................................................6

**Rules and Regulations**

17 Code of Federal Regulations
    § 201.100(b)(1) ...................................................................16
    § 201.101(a) .......................................................................18
    § 201.101(a)(9)(i)................................................................20
    § 201.102 .....................................................................17, 26
    § 201.150(b) .......................................................................17
    § 201.232(c) .......................................................................17
    § 203.7............................................................................22, 25
    § 203.8.............................................................................17

Fed. R. App. P. 8 .......................................................................13

Fed. R. Evid. 201 .......................................................................31

Model Rule of Professional Conduct 4.2 ................................................27

SEC Rules of Practice
    Rule 101 ........................................................................................................19
    Rule 102......................................................................................17, 20, 21
    Rule 150 ..................................................................................................*passim*
    Rule 150(b) .............................................................................................*passim*
    Rule 150(c)......................................................................................................26
    Rule 150(d) .............................................................................................*passim*
    Rule 232(c)......................................................................................17, 19, 22, 26

SEC Rules Relating to Investigations Rule 7 ..........................................................16

## Other Authorities

Rules of Practice,
    60 Fed. Reg. 32,738 (June 23, 1995)....................................................................18

Amendments to the Commission's Rules of Practice
    85 Fed. Reg. 86,464 (Dec. 30, 2020)....................................................................26

2015 SEC Enforcement Manual, 2015 WL 10459618 (June 4, 2015)..............26, 27

https://docs.mirror.finance/ (last visited Mar. 14, 2022) ...........................................2

https://docs.terra.money/docs/learn/protocol.html (last visited Mar.
    14, 2022) ..................................................................................................................1

EMMoU, Art. 3(2)(b)-(c), https://www.iosco.org/about/pdf/Text-of-
    the-EMMoU.pdf........................................................................................................3

https://www.sec.gov/about/offices/oia/oia_coopfactsheet.htm .................................3

Russell Steinberg, *The MLB's DAO Era Begins at National Park*,
    https://boardroom.tv/washington-nationals-terra-partnership/ (last
    visited Mar. 14, 2022)...........................................................................................32

# INTRODUCTION[1]

The United States Securities and Exchange Commission ("SEC") violated its Rules of Practice, the Administrative Procedure Act ("APA"), and basic legal ethics in issuing and attempting to serve subpoenas on entities over which it lacks jurisdiction and which it knew are represented by counsel.

Appellant Terraform Labs Pte, Ltd ("TFL") is an open-source software development firm that focuses its efforts on blockchain technology and decentralized applications that interact with public blockchains. Appellant Do Kwon is TFL's chief executive officer.

TFL created the Terra protocol, which is a leading decentralized and open-source public blockchain protocol for "algorithmic stablecoins."[2] TFL also created the Mirror Protocol, which is a decentralized finance protocol that runs on the Terra blockchain and enables the creation of Mirrored Assets ("mAssets"), which mimic the price behavior of any type of real-world assets and enable traders anywhere in the world to have open access to such price exposure without owning

---

[1]  Citations to Respondent-Appellants' Appendix are in the form "Axxx."

[2]  *See* https://docs.terra.money/docs/learn/protocol.html (last visited Mar. 14, 2022).

1

or trading the actual asset.[3]  The creation of mAssets, called "minting," is undertaken by users of the Mirror Protocol,[4] not by TFL or Mr. Kwon.  The Mirror Token ("MIR") is the governance token of the Mirror Protocol and is minted and distributed by the Mirror Protocol,[5] not TFL or Mr. Kwon.  MIR holders participate in governance by voting on proposals posted to the Mirror Protocol's governance forum.

In May 2021, the SEC staff began investigating whether mAssets or MIR tokens are securities[6] and whether to recommend an enforcement action for not registering them with the SEC (there is no "issuer" of mAssets or MIR tokens—they are minted by the Mirror Protocol pursuant to governance decisions made by the Mirror Protocol community).

The SEC lacks jurisdiction to compel document production or testimony from TFL and Mr. Kwon.  TFL is incorporated under the laws of Singapore and maintains corporate offices in Singapore and South Korea.  Mr. Kwon is a citizen of South Korea and resident of Singapore.  By statute, the SEC cannot serve administrative subpoenas outside the United States, although it can obtain

---

[3]     *See* https://docs.mirror.finance/ (last visited Mar. 14, 2022).

[4]     *See id.*

[5]     *See id.*

[6]     They are not, but that issue is not before this Court.

2

information through cooperative agreements with foreign regulators[7] or through voluntary arrangements with foreign nationals. The SEC staff contacted Mr. Kwon and TFL in May 2021 and asked them to cooperate voluntarily with the SEC's investigation. Neither Mr. Kwon nor TFL were legally obligated to do so. However, while maintaining that the SEC lacked jurisdiction over them, Mr. Kwon and TFL agreed, through their counsel Dentons US LLP, to provide voluntary assistance to the SEC and subsequently cooperated with the SEC staff in its investigation from May to September 2021. As part of that cooperation, counsel and the SEC reached a proffer agreement under which the SEC staff interviewed Mr. Kwon for five hours, while Mr. Kwon was represented by counsel.

---

[7] For example, the SEC is permitted to obtain information through international protocols such as the Enhanced Multilateral Memorandum of Understanding of the International Organization of Securities Commissions ("IOSCO"). The securities regulators of the United States, Singapore, and South Korea are IOSCO signatories. Under IOSCO, signatory nations have pledged to offer one another the "Fullest Assistance Permissible," including "obtaining and providing Information from any Persons regarding the matters set forth in the request" and "[c]ompelling a Person's physical attendance to take or, where permissible, compel that Person's statement or testimony under oath." EMMoU, Art. 3(2)(b)-(c), https://www.iosco.org/about/pdf/Text-of-the-EMMoU.pdf. Not surprisingly, what is "permissible" depends on the local law of each signatory. An overview of the SEC's cooperative arrangements with foreign regulators, including IOSCO and bilateral compacts with individual nations, can be found at https://www.sec.gov/about/offices/oia/oia_coopfactsheet.htm.

3

After that interview, the SEC staff submitted voluntary document requests to counsel. Although the requests were overbroad and did not reflect an appreciation for the substance of topics discussed during the interview with Mr. Kwon, counsel provided what responsive information it could (the vast majority of which was publicly available, one of the key aspects of open-source decentralized blockchain protocols, like the Mirror Protocol, that the SEC staff did not seem to appreciate) and invited further discussion.

During negotiations with Appellants' counsel, the SEC overreached. From monitoring Mr. Kwon's Twitter feed, the SEC staff learned that he would be traveling to the United States to attend an industry conference in New York. They saw this as a chance to "tag" Mr. Kwon in an attempt to secure jurisdiction over him in a way that provided more leverage than voluntary cooperation requests, by trying to serve him personally while in the U.S. On September 20, 2021 the SEC staff had a process server hand Mr. Kwon two investigative subpoenas (the "Subpoenas"), one directed to Mr. Kwon and the other to TFL. Afterward, the SEC staff emailed copies of the Subpoenas to counsel and advised counsel that they had "served" Mr. Kwon "personally." Because the Subpoenas were *initial* compulsory process, whether service was accomplished pursuant to the relevant legal requirements is critical. *See generally F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1311 (D.C. Cir. 1980) (reversing

4

decision enforcing subpoenas and noting that agency issuance, and district court enforcement of, investigative subpoena is "classic exercise of compulsory process").

After briefing and argument, the District Court granted the SEC's application to enforce the Subpoenas, based primarily on an incorrect interpretation of the SEC's Rules of Practice (which govern the issuance and service of administrative subpoenas). Rule of Practice 150(b) prohibits the SEC staff from serving investigative subpoenas on an individual who is represented by counsel without having secured a specific order from the Commission to do so, which was not done. Without such an order, service could only be attempted by asking counsel to accept service (which of course requires TFL and Mr. Kwon to give counsel permission to do so). The SEC neither got such an order nor asked counsel to accept service.

Along with a panoply of different and inconsistent proposed interpretations of Rule of Practice 150, the SEC essentially asserted before the District Court the equivalent of harmless error on the theory that it "served" TFL and Mr. Kwon's counsel with courtesy copies of the Subpoenas after purportedly serving Mr. Kwon. The SEC's positions, and the District Court's acceptance of them, improperly ignored that a key function of the Subpoenas was to provide a method of compelling conduct the SEC did not previously have the ability to compel and

5

which cannot be achieved by "serving" counsel in the first instance without the consent of counsel's client(s) (sending counsel courtesy copies has no effect if the service itself was ineffective). As the SEC staff was not authorized to serve the Subpoenas on Mr. Kwon in the first instance, the District Court erred in granting the SEC's application to enforce the Subpoenas.

The District Court's order should be reversed with directions to deny the SEC's application with prejudice and direct that the SEC return or destroy all information obtained pursuant to the Subpoenas.

## STATEMENT OF JURISDICTION

The District Court granted the SEC's application for an order requiring compliance with the Subpoenas. The District Court had subject matter jurisdiction pursuant to Section 21(c) of the Exchange Act [15 U.S.C. § 78u(c)]. The District Court entered judgment on February 17, 2022, and Appellants filed a timely notice of appeal on February 23, 2022. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. *United States v. Constr. Prod. Rsch., Inc.,* 73 F.3d 464, 469 (2d Cir. 1996) ("A district court order enforcing a subpoena issued by a government agency in connection with an administrative investigation may be appealed immediately without first performing the ritual of obtaining a contempt order.").

## QUESTIONS PRESENTED

1.      Given that Appellants were cooperating voluntarily with the SEC through counsel that both the SEC and the District Court recognized represented Appellants in connection with the SEC's investigation, did the District Court err in concluding that SEC Rule of Practice 150(b) did not, despite its plain language, require an order from the Commission to authorize the SEC's attempted service of the Subpoenas directly on Mr. Kwon?

2.      Given that the bases for personal jurisdiction relied on by the District Court (a) were insufficient under established precedent and/or (b) were untimely raised by the SEC and improperly investigated by the District Court without providing Appellants an ability to respond, did the District Court err in finding the existence of personal jurisdiction to support enforcing the Subpoenas?

## STATEMENT OF THE CASE

This appeal concerns the SEC's application for an order requiring compliance with the Subpoenas, which were issued in connection with the SEC's investigation entitled *In the Matter of Mirror Protocol* (File No. HO-14164).  This appeal arises from an application filed by the SEC in the United States District Court for the Southern District of New York to enforce the Subpoenas.  After briefing and argument Judge Oetken granted the SEC's application, and this appeal followed.

A.   <u>Appellants' Voluntary Cooperation with the SEC Prior to Issuance of the Subpoenas</u>

On May 24, 2021, attorneys from the SEC's Division of Enforcement contacted Mr. Kwon by email.  A105.  Staff attorneys Roger Landsman and Kathleen Hitchens stated that they were investigating the Mirror Protocol.  *Id*. Lacking a subpoena, they asked Mr. Kwon for his voluntary cooperation.  *Id*.

Mr. Kwon and TFL retained Dentons US LLP to represent them in connection with the SEC's investigation and facilitate cooperation with the SEC staff.  A105-06.  On May 27, 2021, Dentons attorney Stephen Senderowitz called Mr. Landsman and informed him that Dentons represented TFL and Mr. Kwon. Mr. Senderowitz provided written confirmation of Dentons US LLP's representation of Mr. Kwon and TFL by email after the initial call with Mr. Landsman (and repeatedly thereafter) and included contact information (address, telephone and email address) for himself and Dentons partner Douglas Henkin.  *Id*. During the initial call, Mr. Landsman expressed his desire to learn more about the business and technical aspects of the Mirror Protocol and related tokens.  A106. During several conversations, Mr. Senderowitz made clear that TFL and Mr. Kwon were beyond the SEC's jurisdiction but conveyed their willingness to cooperate on a voluntary basis.  A106-07.

After multiple conversations between the SEC staff and Messrs. Senderowitz and Henkin, the parties reached a negotiated proffer agreement, which

8

identified Dentons as "counsel" for Mr. Kwon and TFL. *Id.* Mr. Kwon agreed to be interviewed by the SEC for approximately three hours, and the SEC agreed that Mr. Kwon's statements could not directly be used against him or TFL in any subsequent enforcement action. *Id.*

On July 8, 2021, the SEC staff interviewed Mr. Kwon for approximately *five* hours. A107. The interview was conducted via WebEx, given Mr. Kwon's then residence in South Korea (he has since relocated to Singapore). *Id.* Mr. Kwon was represented by Mr. Senderowitz and Mr. Henkin during the interview. *Id.* Questioning covered, but was not limited to, the Mirror Protocol's creation, implementation, functionality, and operations; TFL's past and current involvement with the Mirror Protocol; whether TFL receives income from the minting of or transactions in mAssets; Mr. Kwon's ownership of mAssets or MIR tokens; and where mAssets trade. *Id.*

The interview lasted five hours, two hours longer than what was agreed. Mr. Kwon cooperated fully and answered all of the SEC's questions to the best of his ability except for those few questions that went beyond the scope of what Dentons understood the interview was to cover. A107. When the interview concluded, Ms. Hitchins and Mr. Landsman thanked Mr. Kwon for his cooperation, for extending the interview without objection, and for providing useful information in response to their questions. A108.

9

On July 22, 2021, the SEC staff contacted Dentons to ask that Mr. Kwon and TFL agree to produce certain documents.  *Id*.  The SEC's voluntary document requests sought records that were unavailable and were otherwise so broad and/or defective that to the extent responsive documents might exist, the requests had to be narrowed and clarified.  *Id*.  Nevertheless, on August 17, Dentons provided written responses to the SEC's voluntary document requests and invited further discussion.  A108-09.  Critically, most of the requested documents were publicly available (for example on Github), which was explained to the SEC staff.  *See id*.

On September 15, 2021, SEC staff advised Dentons that, despite the SEC not having concluded that any violations of U.S. securities law had occurred, any potential resolution of the formal order of investigation would have to be accomplished by means of an enforcement action.  A109.  Mr. Senderowitz disagreed that an enforcement action was necessary and suggested the SEC should decline to bring such an action in exchange for cooperation by TFL and Mr. Kwon.  A109-10.

On September 17, 2021, Mr. Senderowitz called Mr. Landsman to discuss a potential resolution of the matter.  *Id*.  Mr. Senderowitz suggested tabling the issue, for now, of whether an enforcement action was necessary or appropriate, but continuing to explore what remedial actions related to the Mirror Protocol the SEC believed TFL could perform to determine if such actions were feasible.  *Id*.

10

During that call, Mr. Landsman made no mention to Mr. Senderowitz of the subpoenas Mr. Landsman had signed earlier that morning for TFL and Mr. Kwon. *Id*. Indeed, despite his steady engagement with Dentons over the course of many weeks, Mr. Landsman never indicated any intention to issue subpoenas. *Id*.

B.   The SEC's Attempted Service of the Subpoenas on Mr. Kwon

On September 20, 2021, Mr. Kwon was in New York to attend "Mainnet 2021," a cryptocurrency summit held at the Marriott Marquis hotel. A110. The SEC staff learned of this development by monitoring Mr. Kwon's Twitter feed. A67. As he exited an escalator on his way to participate in a panel discussion minutes later—which was about interoperability between leading blockchains and various developments in cross-chain technology, not the Mirror Protocol—Mr. Kwon was approached by a process server and handed an envelope containing the Subpoenas. A103, A110. The SEC demanded production of documents by TFL and Mr. Kwon and in-person testimony by Mr. Kwon in Washington, D.C. A115. Later that day, Mr. Landsman emailed copies of the Subpoenas to Mr. Senderowitz and Mr. Henkin with a message that they had been "served this morning personally" on Mr. Kwon. *Id*. That email did not purport to have effected service by being sent to Dentons, nor had the SEC staff ever asked Dentons to accept service. *Id*.

On September 26, 2021, Dentons emailed the SEC staff to request a copy of the order pursuant to Rule of Practice 150(b) that the staff was required to obtain from the SEC before attempting to personally serve an individual represented by counsel.  A111.  The SEC staff never produced such an order.

C.     Disctrict Court Proceedings

On October 22, 2021, Appellants filed an action in the District Court seeking a declaration that the SEC had acted in violation of the APA and its Rules of Practice—specifically Rule of Practice 150(b)—rendering the subpoenas null and void.  *See Terraform Labs Pte Ltd. v. U.S. Sec. & Exch. Comm'n,* Case No. 21-cv-08701-JPO (S.D.N.Y.), ECF No. 1.  The SEC filed a separate application for enforcement of the subpoenas.  A52-56.  Both cases were assigned to Judge Oetken, who decided to proceed by first deciding the SEC's application. Appellants opposed the SEC's application, arguing that service of the Subpoenas was invalidated by the SEC's failure to follow Rule of Practice 150(b) and that there was no personal jurisdiction.  A80-81.

The District Court granted the SEC's application on February 17, 2022.  A7. The District Court recognized that TFL and Mr. Kwon were represented by Dentons in connection with the investigation and their voluntary cooperation with it.  A217-18.  Despite that, the District Court held that Rule of Practice 150(b) did not apply. A218.  The District Court did not issue a written opinion, it issued a

12

short-form order granting the SEC's application and referring to the hearing transcript for its reasoning. The hearing transcript reflects that the District Court's reasoning was faulty. *First*, the District Court erred when it concluded that Dentons did not file the necessary "notice of appearance," even though Dentons fully complied with the SEC's notice requirements and no one—including the District Court—disputes that Dentons represented Appellants for purposes of the SEC's investigation from just days after the SEC first contacted Mr. Kwon. *Second*, the District Court erred in identifying Mr. Kwon as the "person required to be served" under Rule of Practice 150(d), because that interpretation creates a conflict between subparts (b) and (d) of Rule of Practice 150. *Third*, the District Court was wrong to suggest that filing a notice of appearance necessarily includes agreeing to jurisdiction; if true, that would nullify the protections of Rule of Practice 150(b) and other protections in the context of investigations. *Fourth,* the District Court erred in finding that TFL and Mr. Kwon are subject to personal jurisdiction based on contacts that are not causally related to the Subpoenas.

D.    This Appeal

During argument, TFL and Mr. Kwon made an oral motion for a stay pending appeal, which the District Court granted for 14 days (expiring March 3, 2022). A7. On February 23, TFL and Mr. Kwon initiated this appeal and asked the District Court to extend the stay pursuant to Fed. R. App. P. 8. A8, A169-72.

13

The SEC opposed that motion on February 24 (A173-77) and TFL and Mr. Kwon filed a brief reply that evening (A178).

The District Court denied the motion on March 1, 2022 in an order that "substantially" adopted the SEC's arguments regarding irreparable harm. A223. The next day, TFL and Mr. Kwon moved in this Court for a stay pending appeal and expedited briefing and consideration of this appeal. Appellant's motion for an interim stay was denied, but the unopposed motion to expedite was granted. A225.

## SUMMARY OF ARGUMENT

The District Court erred in two ways in granting the SEC's application to enforce the Subpoenas.

*First*, the interpretation of the Rules of Practice, and specifically Rule of Practice 150, put forward by the SEC and accepted by the District Court is inconsistent with the plain text of the Rules of Practice and the SEC's own prior litigation interpretation of those rules. The rules clearly state that when an entity represented by counsel is interacting with the SEC, the SEC may not serve documents on that entity without a specific order issued by the Commission. Appellants were voluntarily cooperating with the SEC, through counsel, for nearly five months when the SEC staff tried to shortcut the SEC's own rules to serve compulsory process on Mr. Kwon in violation of Rule of Practice 150(b).

14

The rationales offered by the SEC and accepted by the District Court do not stand up to scrutiny. It is hornbook law that compulsory process must be served according to the relevant governing law (here, the Rules of Practice), otherwise service is ineffective. The interpretations of its own rules offered by the SEC require cooperating entities to do things that are not called for by the rules or facilitated by the SEC's systems (filing a "formal" notice of appearance), blindly agree to the SEC's jurisdiction in circumstances in which an actual defendant in a lawsuit — *which Appellants are not* — would not be required to so agree, and ignore the undisputed principle that serving compulsory process on retained counsel is not the same as serving counsel's client. The SEC's interpretation would also likely cause future entities to be far less likely to voluntarily cooperate.

*Second*, the District Court erred in finding personal jurisdiction here. On the one hand, putting to the side whether mAssets or MIR tokens could be considered securities or TFL or Mr. Kwon could be considered to have "issued" them— questions not before this Court—the arguments the SEC relied on were, for the most part, analytically identical to arguments litigants have made for well over 100 years that coming into contact with U.S. financial markets in various ways is sufficient to establish personal jurisdiction. But for that entire period of time, courts have held to the contrary. And the SEC's other arguments were raised for the first time at oral argument, were independently investigated during argument

15

by the District Court (which was itself error), and the District Court's factual

conclusions were incorrect.

## STANDARD OF REVIEW

A district court's decision regarding whether to enforce or quash a subpoena

is reviewed for abuse of discretion. *McLane Co. v. E.E.O.C.,* 137 S. Ct. 1159,

1170 (2017). However, errors of law are *per se* abuses of discretion, *United States*

*v. Calderon,* 944 F.3d 72, 94 (2d Cir. 2019), and the District Court's conclusions

of law are reviewed *de novo, Mario Valente Collezioni, Ltd. v Confezioni*

*Semeraro Paolo, S.R.L.,* 264 F.3d 32, 36 (2d Cir. 2001). This Court reviews

factual findings in a district court's decision on personal jurisdiction for clear error

and its legal conclusions *de novo. See Waldman v. Palestine Liberation Org*., 835

F.3d 317, 327 (2d Cir. 2016).

## ARGUMENT

## I. THE SEC VIOLATED RULE OF PRACTICE 150(b)

The District Court's decision was based on an incorrect construction of the

SEC's Rules of Practice. Judicial enforcement of an administrative subpoena

demands that the agency have complied with "the administrative steps required" to

properly issue and serve it. *RNR Enters., Inc. v. SEC,* 122 F.3d 93, 96 (2d

Cir.1997) (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)); *Baxter v.*

*United States,* No. 15-cv-4764, 2016 WL 468034, at *3 (N.D. Cal. Feb. 8, 2016)

("The government having failed to show compliance with the administrative steps

provided in the IRC, the Summons for 2011 cannot be enforced."). Issuance and service of SEC subpoenas are governed by the SEC's Rules Relating to Investigations and Rules of Practice. *See* 17 C.F.R. § 201.100(b)(1) (The Rules of Practice "do not apply to … Investigations, except where made specifically applicable by the Rules Relating to Investigations.").

The applicable rules are not complicated: The analysis starts with Rule 8 of the Rules Relating to Investigations, which requires that "[s]ervice of subpoenas issued in formal investigative proceedings shall be effected in the manner prescribed by Rule 232(c) of the Commission's Rules of Practice." 17 C.F.R. § 203.8. Rule of Practice 232(c) confirms that "[t]he provisions of this paragraph (c) *shall apply to the issuance of subpoenas for purposes of investigations*," and requires that such "[s]ervice shall be made pursuant to the provisions of § 201.150(b) through (d)." *Id*. § 201.232(c) (emphasis added).

The analysis then moves to Rule of Practice 150(b), which requires that "[w]henever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to § 201.102, service shall be made pursuant to paragraph (c) of this section upon counsel, unless service upon the person represented is ordered by the Commission … ." *Id.* § 201.150(b). Rule of Practice 102 provides in relevant part as follows:

> ***Representing others.*** When a person first makes any filing or otherwise appears in a representative capacity before the Commission

17

> or a hearing officer in a proceeding as defined in § 201.101(a), that person shall file with the Commission, and keep current, a written notice stating the name of the proceeding; the representative's name, business address, email address, and telephone number; and the name, email address, and address of the person or persons represented.

*Id.* § 201.102(d)(2).  Note what the rule does *not* require—any consent to jurisdiction or agreement to accept service of compulsory process.  Moreover, there is no docket where counsel representing a party during an investigation can "file" a notice of appearance, nor is there a prescribed form required by the Rules of Practice.  Rather, it is the customary and ordinary practice to contact Enforcement staff conducting the investigation and notify staff of counsel's involvement and contact information, precisely what Dentons did here.

The SEC's adopting release for Rule of Practice 150—the rule's legislative history—demonstrates that the rule means precisely what it says:  "One commenter objected to the provision in the proposed rule that would have allowed service directly upon a party where the party was represented by counsel.  In response, Rule of Practice 150(b) has been amended to clarify that service upon counsel by another party is required unless service upon the person represented is specifically ordered by the Commission or the hearing officer."  Rules of Practice, 60 Fed. Reg. 32,738, 32,751 (June 23, 1995).

The undisputed facts show that the SEC violated Rule of Practice 150(b) here.  In May, 2021, after the SEC contacted Appellants by email seeking their

voluntary cooperation in the Mirror Protocol investigation, Dentons informed the

SEC staff that it represented Mr. Kwon and TFL in the investigation and provided

their contact information then (and thereafter).  A105-06.  TFL and Mr. Kwon then

voluntarily cooperated with the SEC staff, at all times through Dentons, for *four*

*months*:

- Dentons attorneys negotiated a proffer agreement with the SEC—an agreement drafted by the SEC in which the SEC itself identified Dentons as TFL and Mr. Kwon's counsel.  A106-07.

- Dentons attorneys were present at the SEC's interview of Mr. Kwon in July 2021.  A107.

- The SEC staff sent their voluntary document requests for Mr. Kwon to Dentons, and Dentons prepared and sent back the written responses. A108.

- And the District Court understood that TFL and Mr. Kwon were represented by Dentons throughout this period.  A217.

The SEC did not dispute that Mr. Kwon was represented by counsel when it

attempted to serve the Subpoenas on him or that it failed to obtain the requisite

order authorizing service directly on Mr. Kwon.  Rather, it argued that Rule of

Practice 150(b) does not apply to investigations.  *First*, the SEC contended that

Dentons never complied with the required notice of appearance to trigger the

obligation to serve counsel.  *Second*, the SEC claimed that (a) notices of

appearances are not filed in investigations *at all*—instead, such notices are filed in

"proceedings" and that investigations are not "proceedings,"[8] and (b) that the SEC served counsel by sending courtesy copies after Mr. Kwon was personally served. *Third*, the SEC contended that Rule of Practice 150(d)—independently and sufficiently—authorized personal service upon Mr. Kwon, notwithstanding the clear command of Rule of Practice 150(b).

The District Court accepted the SEC's argument that it was not required to comply with Rule of Practice 150(b) because Dentons "did not even file the notice of appearance" mentioned in the rule. A217-18. That was an error of law.

*First*, Dentons appeared in the only way possible for non-U.S. entities that choose to cooperate voluntarily (which such entities are of course not required to do): On May 27, 2021, Mr. Senderowitz contacted Mr. Landsman— after Mr. Landsman and his colleague had emailed Mr. Kwon seeking his and TFL's voluntary cooperation. Mr. Senderowitz informed Mr. Landsman that Dentons represented Mr. Kwon and TFL, and provided his contact information. No special form is needed under Rule of Practice 102 to make an appearance in an

---

[8]    Although the District Court did not address it, this argument fails for two reasons. It contradicts Rule of Practice 232(c), which requires that investigative subpoenas be served in accordance with 150(b). And the SEC's premise is false—investigations *are* proceedings. Rule of Practice 101 defines "proceeding" broadly to include "any agency process initiated … [b]y an order instituting proceedings." 17 C.F.R. § 201.101(a)(9)(i). This investigation was initiated by the Order of Investigation issued on May 7, 2021.

investigation, which triggers Rule of Practice 150(b)'s protections.  All Rule 102

requires is that when a person appears in a representative capacity before the

Commission, that person shall comply with a written notice stating the name of the

proceeding; the representative's name, business address and telephone number;

and the name and address of the person or persons represented.  The SEC *already*

*had* Appellants' contact information, having contacted them by email, prompting

Appellants to hire Dentons.  Dentons in turn advised Mr. Landsman by telephone

and in writing that Messrs. Senderowitz and Henkin represented Mr. Kwon and

TFL, and provided attorney contact information, all consistent with Rule 102's

requirements.  There was no "docket" or other way to physically file a "notice of

appearance" (nor did the SEC ever contend otherwise).  And there is no specific

form the SEC requires.  As demonstrated above, the SEC then interacted with

Appellants solely through Dentons, confirming by its conduct that Dentons had

appeared for Appellants.

The SEC's arguments here are also contradicted by its only other litigation

interpretation of the relevant Rules of Practice.  In a prior proceeding, the SEC

argued that:

> It would elevate form over substance to require, in the context of an
> SEC *investigation*, that a formal 'notice of appearance' be entered in
> order for Rule 150(b) to be given effect.  As noted, an investigation
> often precedes and is distinct from an administrative proceeding.
> Thus, in almost all cases requiring entry of a 'notice of appearance'
> would frustrate and render ineffective Rule 232(c)'s express reference

to Rule 150(b), a result that any reasonable construction of the SEC's rules should avoid.

A29 n.9.

The District Court held that the SEC's prior interpretation was not binding on the District Court. A182, A218. But the SEC's inconsistent prior interpretation of rules it promulgated is relevant to whether a court should credit the interpretation it posits now. *Cf. Lever Bros. Co. v. United States*, 981 F.2d 1330, 1337 (D.C. Cir. 1993) ("inconsistent litigating positions" by an agency are "undeniably relevant" to the proper construction of the agency's governing statute). The question was not whether the SEC's prior interpretation was "binding" on the District Court, but whether the District Court should have given any deference to the SEC's new, inconsistent interpretation. It should not have done so.

Indeed, the SEC's newly-proposed interpretation of Rule of Practice 150(b) would deny its protections to all individuals under investigation who choose to cooperate voluntarily with the assistance of counsel. That cannot be right because (a) the SEC's rules specifically acknowledge the right to be represented by counsel in any interactions with the SEC (17 C.F.R. § 203.7) and (b) Rule of Practice 232(c) makes clear that Rule of Practice 150(b) applies to investigations, and the interpretation proposed by the SEC and adopted by the District Court would nullify (a) and (b).

The District Court's holding is also inconsistent with the courts' strict views of compulsory process. The D.C. Circuit has explained that courts cannot assume that Congress intended for regulatory agencies "to employ any and all methods to serve compulsory process when conducting their investigations." *F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1304 (D.C. Cir. 1980). In that case, the FTC issued four subpoenas to a French company that had a "general delegate" in the U.S. and had counsel in Washington, D.C. representing it in a related matter; the FTC sent one copy to the company in Paris, hand-delivered a copy to the office of the general delegate in New York City, delivered one copy to the New York City residence of the general delegate's daughter, and served one on the attorney. *See id*. at 1305. The D.C. Circuit summarily held that the second, third, and fourth methods of service were improper, *id*. at 1305-06 & n.14, and ultimately held the first method improper under the rules applicable to FTC investigative subpoenas (calling it a "classic exercise of compulsory process"), *id*. at 1311-27. In its decision reversing the district court, the D.C. Circuit directed that the district court's order should require the FTC to return "all documents and copies submitted by" the French company and destroy "all notes, extracts, or other records derived from such documents." *See id*. at 1327. The District Court's acceptance of the SEC's conduct here was inconsistent with the D.C. Circuit's reasoning in *Compagnie De Saint-Gobain-Pont-a-Mousson*.

23

Moreover, the SEC cannot use a litigation interpretation to amend a rule—like Rule of Practice 150—that has been adopted pursuant to notice and comment rulemaking. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) ("[A]gencies [must] use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance."). If the SEC wanted to change Rule of Practice 150 to permit what it tried to do here, it was required to do so by notice and comment rulemaking, not by seeking approval of the courts to disobey its clear requirements. And clearly no such rulemaking could ratify its actions here.

*Second*, the District Court's conclusion that to "appear" before the SEC such that Rule of Practice 150(b) becomes effective requires that counsel be authorized to accept initial compulsory process (A186) is unsupported by any statute, rule, or precedent, and writes Rule of Practice 150(b) out of existence. Indeed, "[s]ervice of process on an attorney not authorized to accept service for his client is ineffective." *Zherka v. Ryan,* 52 F. Supp. 3d 571, 577 (S.D.N.Y. 2014) (citation omitted). The SEC therefore had no basis to urge the inference that Appellants had authorized Dentons to accept service of process on their behalf. *See Santos v. State Farm Fire & Cas. Co.,* 902 F.2d 1092, 1094 (2d Cir. 1990). This also suggests a substantial policy blindspot on the SEC's behalf: Why would a foreign entity agree to cooperate with a voluntary request from the SEC in the future if this is

what such cooperation means?  They would not—they would be advised to decline the request and tell the SEC to use mechanisms such as IOSCO.

The District Court actually went further, suggesting that a "notice of appearance" sufficient for Rule 150(b) necessarily means "agreeing to the jurisdiction."  A186.  That presents significant constitutional concerns in addition to being unsupported by any authority.  *See generally Waldman v. Palestine Liberation Org*., 835 F.3d 317, 328 (2d Cir. 2016) (personal jurisdiction represents the constitutional "right to be subject only to lawful power"); *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) ("[T]he government may not, as a general rule, grant even a gratuitous benefit on condition that the beneficiary relinquish a constitutional right.").  It cannot be that the right to be "accompanied, represented and advised by counsel"—expressly codified in the "rights of witnesses" section of the SEC's Rules Related to Investigations, 17 C.F.R. § 203.7—can only be enjoyed by one who submits to personal jurisdiction by voluntarily cooperating when compulsory process is unavailable.  Were this true, voluntary cooperation would be a rare occurrence.

*Third*, the District Court improperly decided that the SEC staff properly served the Subpoenas pursuant to Rule of Practice 150(d), because that reads subsection (b) out of existence in connection with cooperating entities.  When a cooperating entity is represented by counsel, subsection (b) defines the "person

25

required to be served" in subsection (d) as its counsel.[9]  Rule of Practice 232(c) says that Rule of Practice "150(b) through (d)" applies to investigative subpoenas, and it would render subsection (b) meaningless if subsection (d) were read to allow service of an investigative subpoena on an individual when he is represented by counsel.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (a rule should be so construed that, if it can be prevented, "no clause, sentence, or word shall be

---

[9]    Prior versions of Rule of Practice 150 confirm this relationship between the subsections.  Prior to its amendment in January of 2021, Rule of Practice 150 read as follows:

> (b) *Upon a Person Represented by Counsel*. Whenever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to § 201.102, service shall be made pursuant to paragraph (c) of this section upon counsel, unless service upon the person represented is ordered by the Commission or the hearing officer.

> (c) *How made*. Service shall be made by delivering a copy of the filing. Delivery means:

> (1) Personal service--handing a copy to the person required to be served . . . .

17 CFR § 201.102(d)(2); *See, e.g.*, 2015 SEC Enforcement Manual, 2015 WL 10459618, at *34 (June 4, 2015) (quoting the then-current Rule of Practice 150(b)–(c)).  Service was thus to be made either upon the party, or upon counsel if the party was represented, by the then-exclusive method: "Delivery."  In 2015, the Commission "proposed to amend Rule 150(c) to require parties to serve each other electronically."  Amendments to the Commission's Rules of Practice, 85 Fed. Reg. 86,464, 86,473 (Dec. 30, 2020).  The current subsection (d) is simply a redesignation of prior subsection (c).  Subsections (c) and (d) do not identify "the person required to be served," subsection (b) does that.

26

superfluous, void, or insignificant") (citation omitted). Subsection (b) only has meaning if it limits the "[a]dditional methods of service" otherwise available under subsection (d) and thus prohibits personal service of an investigative subpoena in cases where an individual is represented by counsel, absent a specific order issued by the SEC.[10]

*Fourth*, the District Court's decision is inconsistent with the longstanding ethical principle that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Model Rules of Prof'l Conduct r. 4.2 (Am. Bar Ass'n 2020).[11] Rule of Practice 150(b) effectively codifies this rule for SEC investigative subpoenas.

---

[10]    Although Mr. Landsman was designated in the formal order issued by the SEC on May 7, 2021 as an SEC employee *generally* empowered to issue subpoenas, the formal order did not provide him with specific authority to serve the Subpoenas upon Mr. Kwon if he was represented by counsel. For that, Mr. Landsman needed a specific order issued by the Commission, which he did not obtain.

[11]    Rule 4.2 applies to SEC attorneys. *See* 28 U.S.C.A § 530(B)(a); 2015 SEC Enforcement Manual, 2015 WL 10459618, at *51 (June 4, 2015).

27

Because the SEC violated Rule of Practice 150(b), it did not comply with the administrative steps necessary for enforcement of the Subpoenas, and the District Court's order enforcing the Subpoenas must be reversed.

## II. THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS ARE SUBJECT TO PERSONAL JURISDICTION

The District Court made two errors requiring reversal in finding personal jurisdiction. A218.

As an initial matter, if the SEC thought that some of the "contacts" it argued supported personal jurisdiction over Appellants were sufficient, it would not have spent nearly five months engaged in voluntary cooperation with Appellants before springing the Subpoenas on Mr. Kwon at Mainnet 2021, it would have tried to serve subpoenas (perhaps only on TFL in the first instance) much earlier. That it did not, and acted the way it did, is clear evidence that the District Court was wrong about the connections the District Court relied on (A218-20) being sufficient to support personal jurisdiction.

Although (a) whether or not mAssets or MIR tokens are securities and (b) whether or not TFL could be deemed an "issuer" of either if they were are not issues raised by this appeal, the SEC's arguments in favor of personal jurisdiction are substantively identical to those that have been raised by parties arguing that issuers who listed equity securities on a U.S. exchange, participated in capital markets transactions in the U.S. (including "targeting" U.S. investors and capital

28

markets), participated in road shows and investor relations events, retained U.S. counsel, and retained U.S. investor relations firms were contacts sufficient to support personal jurisdiction; essentially the SEC asserted the equivalent of such activities relating to Appellants. A198-201.

Appellants informed the District Court that more than 120 years of federal and state case law hold that the sorts of activities the SEC relied on are not sufficient to support personal jurisdiction, but the District Court ignored that. A200-01. For example, in *Robbins v. Ring*, 166 N.Y.S.2d 483, 484-85 (Sup. Ct. N.Y. Cnty. 1957), Justice McGivern held that allegations that a company's stock was listed on the American Stock Exchange, its transfer agent was located in New York, and it had undertaken negotiations in New York to place $3 million of convertible notes were not sufficient to support general jurisdiction because such allegations would subject "almost every corporation" to general jurisdiction in New York. That has been the rule in New York since at least 1890,[12] and courts have followed it without exception.[13] The same principle applies outside New

---

[12] *See Celi v. Canadian Occidental Petroleum Ltd.*, 804 F. Supp. 465, 468 (E.D.N.Y. 1992).

[13] *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000); *Nursan Metalurji Endustrisi A.S. v. M/V "Torm Getrud,"* No. 07 Civ. 7687, 2009 WL 536059, at *2 (S.D.N.Y. Feb. 27, 2009); *Wolfson v. Conolog Corp.*, No. 08 Civ. 3790, 2009 WL 465621, at *4 (S.D.N.Y. Feb. 25, 2009); *Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320, 2008 WL

York as well.[14] TFL is a software company, not a securities issuer, and if the District Court is not reversed then the SEC could make assertions like these about virtually any company that chooses to participate in software development relating to digital assets.

Put differently, the SEC cannot support personal jurisdiction by arguing that certain businesses, by their very nature, result in a person or company being "present" in the U.S. In *Mantello v. Hall*, 947 F. Supp. 92, 97 (S.D.N.Y. 1996), the plaintiff asserted that the defendants could not be legitimately involved in their businesses without doing "regular, consistent and purposeful business with the New York theater community," thus purporting to base jurisdiction on alleged

---

4615896, at *5 (S.D.N.Y. Oct. 15, 2008), *aff'd*, 595 F.3d 458 (2d Cir. 2010); *IP Co. v. Gen. Commc'n, Inc*., No. 07 Civ. 2372, 2007 WL 3254387, at *3 (S.D.N.Y. Oct. 31, 2007); *Gilson v. Pittsburgh Forgings Co*., 284 F. Supp. 569, 570-71 (S.D.N.Y. 1968).

[14] *See Appaloosa Inv., L.P.I. v. J.P. Morgan Secs., Inc*., 939 A.2d 257, 260 (N.J. Super. Ct. App. Div. 2008); *Gorman v. Goldcorp, Inc*., No. 07-CV-155, 2007 WL 4208982, at *3 (S.D. Ill. Nov. 26, 2007) ("Essentially, Gorman equates a corporation selling its stocks on the New York Stock Exchange with a manufacturer selling its products in the national stream of commerce. However, the two are not equivalent. Moreover, Gorman does not identify a single decision in any court finding that the listing of a company's stocks on the New York Stock Exchange necessarily results in personal jurisdiction in every state. On the contrary, the Court finds more persuasive New York case law holding that trading on the stock exchange, without more, does not necessarily constitute 'doing business,' even in the state of New York where the Stock Exchange is located.") (citation omitted).

relationships with non-parties who were present in New York. Judge Mukasey rejected that argument because jurisdiction based on third party activities is appropriate only if (a) the third party has no existence independent of the defendant and (b) the third party does all the business that the defendant could do were it present in New York by its own personnel. *See id*. at 97-98. Neither is true for the connections the SEC alleged here.

Finally, the District Court erred in addressing the SEC's allegations, raised for the first time during oral argument, regarding what it called an agreement between TFL and the Washington Nationals the SEC claimed was related to the Mirror Protocol. The District Court erred in allowing the SEC to raise that argument at all, because it was not in the SEC's moving papers. *See Gao v. Barr*, 968 F.3d 137, 141 n.1 (2d Cir. 2020) ("It is well established that arguments raised for the first time at oral argument are deemed 'waived.'"). The District Court erred in accepting the SEC's assertions without giving Appellants a meaningful opportunity to refute them. *See, e.g.*, *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived."). The District Court erred in apparently doing its own research on this subject during the argument (A219), even though it is manifestly not subject to judicial notice under Fed. R. Evid. 201 (nor was there even a request

that the District Court take judicial notice).[15]  And the District Court simply got this factually wrong:  The Washington Nationals entered into an agreement with the Terra Community Trust, which is organized under the laws of the Island of Guernsey, has no relation to or common ownership with TFL, and is directed solely by the Terra community via governance proposals made on the Terra blockchain. The agreement between the Terra Community Trust and the Washington Nationals only relates to stadium-related naming rights and other stadium-specific obligations wholly unrelated to TFL and the Mirror Protocol.  *See, e.g.,* Russell Steinberg, *The MLB's DAO Era Begins at National Park*, https://boardroom.tv/washington-nationals-terra-partnership/ (last visited Mar. 14, 2022).  Had the District Court not acted so hastily, Appellants would have been able to submit evidence disproving the SEC's assertions.

These errors require the District Court's jurisdictional conclusions to be reversed.

## CONCLUSION

For all the foregoing reasons, this Court should reverse the District Court's order and remand with directions to (a) deny the SEC's application to enforce the

---

[15]  *See Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 424 (2d Cir. 2008) (confirming that courts cannot take judicial notice of news reports for the truth of what is discussed therein).

32

Subpoenas, (b) require the SEC to return all documents received from Appellants pursuant to the Subpoenas during the pendency of this appeal, (c) destroy all record of any testimony by Mr. Kwon during the pendency of this appeal and all notes, extracts, or other records derived from such testimony or documents produced, and (d) require that the SEC may not make any other use of testimony or documents received pursuant to the Subpoenas.  *See F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1327 (D.C. Cir. 1980).

Respectfully submitted,

By: */s/ Douglas W. Henkin*
  Douglas W. Henkin
  DENTONS US LLP
  1221 Avenue of the Americas
  New York, NY 10020
  douglas.henkin@dentons.com
  Telephone (212) 768-6832
  Fax (212) 768-6800

  *Counsel for Respondents-Appellants*
  *Terraform Labs Pte, Ltd. and*
  *Do Kwon*

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 7,653 words, excluding the portions of the brief exempted by Rule 32(f), according to the count of Microsoft Word.

I further certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5) – (6) because it is printed in a proportionally spaced 14-point font, Times New Roman.

*/s/ Douglas W. Henkin*
Douglas W. Henkin
*Counsel for Respondents-Appellants*

# ADDENDUM

17 C.F.R. § 201.100

17 C.F.R. § 201.150

17 C.F.R. § 201.232

28 U.S.C.A. § 530B

*SEC Enforcement Manual* Section 3.2.6

*SEC Enforcement Manual* Section 3.3.5.3.

GENERAL RULES

**Rule 100. Scope of the Rules of Practice**.

(a) Unless provided otherwise, these Rules of Practice govern proceedings before the Commission under the statutes that it administers.

(b) These rules do not apply to:

    (1) investigations, except where made specifically applicable by the Rules Relating to Investigations, part 203 of this chapter; or

    (2) actions taken by the duty officer pursuant to delegated authority under 17 CFR 200.43

**Rule 150. Service of Papers By Parties.**

(a) *When Required*. In every proceeding as defined in Rule 101(a), each paper, including each notice of appearance, written motion, brief, or other written communication, shall be served upon each party in the proceeding in accordance with the provisions of this rule; provided, however, that absent an order to the contrary, no service shall be required for motions which may be heard *ex parte*.

(b) *Upon a Person Represented by Counsel*. Whenever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to Rule 102, service shall be made pursuant to paragraph (c) of this rule upon counsel, unless service upon the person represented is ordered by the Commission or the hearing officer.

(c) *How Made*. Service shall be made by delivering a copy of the filing. *Delivery* means:

    (1) personal service -- handing a copy to the person required to be served; or leaving a copy at the person's office with a clerk or other person in charge thereof; or leaving a copy at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein;

    (2) mailing the papers through the U.S. Postal Service by first class, certified, registered, or Express Mail delivery addressed to the person;

(3)   sending the papers through a commercial courier service or express delivery service addressed to the person; or

(4)    transmitting the papers by facsimile machine where the following conditions are met:

  (i)   the persons serving each other by facsimile transmission have agreed to do so in a writing, signed by each party, which specifies such terms as they deem necessary with respect to facsimile machine telephone numbers to be used, hours of facsimile machine operation, the provision of non-facsimile original or copy, and any other such matters; and

  (ii)   receipt of each document served by facsimile is confirmed by a manually signed receipt delivered by facsimile machine or other means agreed to by the parties.

(d)   *When Service is Complete*. Personal service, service by U.S. Postal Service Express Mail or service by a commercial courier or express delivery service is complete upon delivery. Service by mail is complete upon mailing. Service by facsimile is complete upon confirmation of transmission by delivery of a manually signed receipt.


**Rule 232. Subpoenas.**

(a)   *Availability; Procedure*. In connection with any hearing ordered by the Commission, a party may request the issuance of subpoenas requiring the attendance and testimony of witnesses at the designated time and place of hearing, and subpoenas requiring the production of documentary or other tangible evidence returnable at any designated time or place. Unless made on the record at a hearing, requests for issuance of a subpoena shall be made in writing and served on each party pursuant to Rule 150. A person whose request for a subpoena has been denied or modified may not request that any other person issue the subpoena.

(1)   *Unavailability of Hearing Officer*. In the event that the hearing officer assigned to a proceeding is unavailable, the party seeking issuance of the subpoena may seek its issuance from the first available of the following persons: the Chief Administrative Law Judge, the law judge most senior in service as a law judge, the duty officer, any other member of the Commission, or any other person designated by the Commission to issue subpoenas. Requests for issuance of a subpoena made to the Commission, or any member

37

thereof, must be submitted to the Secretary, not to an individual Commissioner.

(2) *Signing May be Delegated*. A hearing officer may authorize issuance of a subpoena, and may delegate the manual signing of the subpoena to any other person authorized to issue subpoenas.

(b) *Standards for Issuance*. Where it appears to the person asked to issue the subpoena that the subpoena sought may be unreasonable, oppressive, excessive in scope, or unduly burdensome, he or she may, in his or her discretion, as a condition precedent to the issuance of the subpoena, require the person seeking the subpoena to show the general relevance and reasonable scope of the testimony or other evidence sought. If after consideration of all the circumstances, the person requested to issue the subpoena determines that the subpoena or any of its terms is unreasonable, oppressive, excessive in scope, or unduly burdensome, he or she may refuse to issue the subpoena, or issue it only upon such conditions as fairness requires. In making the foregoing determination, the person issuing the subpoena may inquire of the other participants whether they will stipulate to the facts sought to be proved.

(c) *Service*. Service shall be made pursuant to the provisions of Rule 150(b) - (d). The provisions of this paragraph (c) shall apply to the issuance of subpoenas for purposes of investigations, as required by 17 CFR 203.8, as well as hearings.

(d) *Tender of fees required*. When a subpoena compelling the attendance of a person at a hearing or deposition is issued at the instance of anyone other than an officer or agency of the United States, service is valid only if the subpoena is accompanied by a tender to the subpoenaed person of the fees for one day's attendance and mileage specified by paragraph (f) of this rule.

(e) *Application to Quash or Modify*.

(1) *Procedure*. Any person to whom a subpoena is directed or who is an owner, creator or the subject of the documents that are to be produced pursuant to a subpoena may, prior to the time specified therein for compliance, but in no event more than 15 days after the date of service of such subpoena, request that the subpoena be quashed or modified. Such request shall be made by application filed with the Secretary and served on all parties pursuant to Rule 150. The party on whose behalf the subpoena was issued may, within five days of service of the application, file an opposition to the

38

application. If a hearing officer has been assigned to the proceeding, the application to quash shall be directed to that hearing officer for consideration, even if the subpoena was issued by another person.

(2) *Standards Governing Application to Quash or Modify*. If compliance with the subpoena would be unreasonable oppressive or unduly burdensome, the hearing officer or the Commission shall quash or modify may order return of the subpoena only upon specified conditions. These conditions may include but are not limited to a requirement that the party on whose behalf the subpoena was issued shall make reasonable compensation to the person to whom the subpoena was ad-dressed for the cost of copying or transporting evidence to the place for return of the subpoena.

(f) *Witness Fees and Mileage*. Witnesses summoned before the Commission shall be paid the same fees and mileage that are paid to witnesses in the courts of the United States, and witnesses whose depositions are taken and the persons taking the same shall severally be entitled to the same fees as are paid for like services in the courts of the United States. Witness fees and mileage shall be paid by the party at whose instance the witnesses appear.

**Comment(a):** Rule 232 requires that, unless made on the record at a hearing, subpoena requests must be in writing. Ex parte, oral communication with the hearing officer concerning the need for issuance of a subpoena creates the opportunity for unintended and potentially improper discussion of the merits of a case.

**Comment (b):** Rule 232(b) is based upon Section 555(d) of the Administrative Procedure Act, 5 U.S.C. 555(d).

28 U.S.C.A. § 530B

§ 530B. Ethical standards for attorneys for the Government

Currentness

(a)    An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

(b)    The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

(c)    As used in this section, the term "attorney for the Government" includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

Enforcement Manual, 2015 WL 10456618 (2016)

### 3.2.6 Subpoenas for Documents

**Basics:**

The Commission, or the staff it designates as officers in a formal order of investigation, may issue subpoenas for documents or witnesses, pursuant to Section 19(c) of the Securities Act, Section 21(b) of the Exchange Act, Section 209(b) of the Advisers Act, and Section 42(b) of the Investment Company Act. The Commission or its designated officers may require the production of any records deemed relevant or material to the inquiry and may require their production from any place in the United States.

- To issue a subpoena for documents, a staff member must be named as an officer for purposes of an investigation in the Commission's formal order. Once the Commission has issued a formal order, the staff named as officers in the order may issue subpoenas.

- Some documents cannot be obtained without issuing a subpoena, such as records from telephone companies or banks.

- A subpoena for documents should be accompanied by a Form 1662.

- Rule 7(a) of the SEC's Rules Relating to Investigations provides that any person who is compelled or required to furnish documents or testimony at a formal investigative proceeding shall, upon request, be shown the formal order. Such a person may also obtain a copy of the formal order by submitting a written request to the Assistant Director supervising the investigation. See 17 C.F.R. § 203.7(a).

- A subpoena for documents should include an attachment to the subpoena listing the documents requested (generally by category or type of document).

**Further information**

- Subpoenas to financial institutions such as banks and credit card issuers are subject to the Right to Financial Privacy Act. For more information on this Act, see Section 4.5 of the Manual.

- For procedures on granting a request for a copy of the formal order, see Section 2.3.4.2 of the Manual.

- For more information about Forms 1661 and 1662, see Section 3.2.3.1 of the Manual.

### 3.2.6.1 Service of Subpoenas

Under Rule 8 of the SEC's Rules Relating to Investigations (17 C.F.R. § 203.8), service of subpoenas issued in formal investigative proceedings shall be effected in the manner prescribed by Rule 232(c) of the SEC's Rules of Practice (17 C.F.R. § 201.232(c)). Rule 232(c), in turn, states that service shall be made pursuant to the provisions of Rule 150(b) through (d) of the SEC's Rules of Practice (17 C.F.R. §§ 201.150(b) through (d)).

Rule 150 provides that service of subpoenas may be effected:

(b) *Upon a person represented by counsel.* Whenever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to § 201.102, service shall be made pursuant to paragraph (c) of this section upon counsel, unless service upon the person represented is ordered by the Commission or the hearing officer.

(c) *How made.* Service shall be made by delivering a copy of the filing. Delivery means:

(1)   Personal service--handing a copy to the person required to be served; or leaving a copy at the person's office with a clerk or other person in charge thereof, or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein;

(2)   Mailing the papers through the U.S. Postal Service by first class, registered, or certified mail or Express Mail delivery addressed to the person;

(3)   Sending the papers through a commercial courier service or express delivery service; or

(4)    Transmitting the papers by facsimile transmission where the following conditions are met:

(i)    The persons so serving each other have provided the Commission and the parties with notice of the facsimile machine telephone number to be used and the hours of facsimile machine operation;

(ii)    The transmission is made at such a time that it is received during the Commission's business hours as defined in § 201.104; and

(iii)    The sender of the transmission previously has not been served in accordance with § 201.150 with a written notice from the recipient of the transmission declining service by facsimile transmission.


(d) *When service is complete.* Personal service, service by U.S. Postal Service Express Mail or service by a commercial courier or express delivery service is complete upon delivery. Service by mail is complete upon mailing. Service by facsimile is complete upon confirmation of transmission by delivery of a manually signed receipt.


### 3.3.5.3 Witness Right to Counsel


**Basics:**


- **Any person compelled to appear, or who appears by request or permission of the SEC, in person at a formal investigative proceeding may be accompanied, represented and advised by counsel, provided, however, that all witnesses shall be sequestered, and unless permitted in the discretion of the officer conducting the investigation no witness or the counsel accompanying any such witness shall be permitted to be present during the examination of any other witness.** *See* **Rule 7(b) of the SEC's Rules Relating to Investigations, 17 C.F.R. • 203.7(b). Any person appearing with a witness in a formal investigative proceeding may be asked by the officer conducting the examination to confirm on-the-record that he or she is representing the witness as his or her counsel.**

- **This means that a testifying witness may have an attorney present with him or her during any formal investigative proceeding, and the attorney may (1) advise the witness before, during and after the testimony; (2) question the witness briefly at the conclusion of the testimony to clarify any of the answers the witness gave during testimony; and (3) make summary notes during the witness's testimony solely for the witness's use.** *See* **Rule 7(c) of the SEC's**

43

**Rules Relating to Investigations, 17 C.F.R. § 203.7(c). If the witness is accompanied by counsel, he or she may consult privately.**

- "Counsel" is defined as any attorney representing a party or any other person representing a party pursuant to Rule 102(b) of the SEC's Rules of Practice, 17 C.F.R. § 201.102(b). *See* Rule 101(a) of the SEC's Rules of Practice, 17 C.F.R. § 201.101(a).

- Rule 102(b) of the SEC' s Rules of Practice states that in any proceeding a person may be represented by an attorney at law admitted to practice before the Supreme Court of the United States or the highest court of any State (as defined in Section 3(a)(16) of the Exchange Act, 15 U.S.C. § 78c(a)(16)); a member of a partnership may represent the partnership; a bona fide officer of a corporation, trust or association may represent the corporation, trust, or association; and an officer or employee of a state commission or of a department or political subdivision of a state may represent the state commission or the department or political subdivision of the state.

<u>**Considerations:**</u>
- If a witness is not accompanied by counsel, the witness may advise the SEC employee taking the testimony at any point during the testimony that he or she desires to be accompanied, represented and advised by counsel. Testimony will be adjourned once to afford the witness an opportunity to arrange for counsel.


- The witness may be represented by counsel who also represents other persons involved in the SEC's investigation. For more information on Multiple Representations, *see* <u>Section 4.1.1.1</u> of the Manual.

44

## CERTIFICATE OF SERVICE

On this 15th day of March, 2022 a true and correct copy of the foregoing was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Second Circuit, which currently provides electronic service on the counsel of record.

*/s/ Douglas W. Henkin*
Douglas W. Henkin
*Counsel for Respondents-Appellants*