# No. 22-368-cv

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

*Petitioner-Appellee,*

v.

TERRAFORM LABS PTE, Ltd. and DO KWON,

*Respondents-Appellants.*

*On Appeal from an Order of the
United States District Court for the Southern District of New York
No.: 1:21-mc-00810-JPO*

## PETITIONER-APPELLEE'S SUPPLEMENTAL APPENDIX

<div style="margin-left:50%">

SAMUEL M. FORSTEIN
Assistant General Counsel

ERIC A. REICHER
Special Trial Counsel

Office of the General Counsel
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-9612
(202) 551-7921 (Reicher)
reichere@sec.gov

</div>

**TABLE OF CONTENTS**

Second Declaration of Roger J. Landsman in Support of U.S. Securities and
    Exchange Commission's Application for an Order Requiring Compliance
    with Subpoenas, filed December 27, 2021 (ECF 22-2)...................................SA1

SEC Subpoena to Terraform Labs Pte, Ltd. dated September 17, 2021,
    filed November 12, 2021 (ECF 4-8)..................................................................SA4

SEC Subpoena to Do Kwon, dated September 17, 2021,
    filed November 12, 2021 (ECF 4-9)................................................................SA15

Order denying stay pending appeal, filed March 1, 2022 (ECF 37) .................SA28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                              Applicant,

              v.                                          No. 21-mc-00810 (JPO)

TERRAFORM LABS PTE, Ltd. and
DO KWON,

                              Respondents.

---

**SECOND DECLARATION OF ROGER J. LANDSMAN IN SUPPORT OF U.S.**
**SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER**
**REQUIRING COMPLIANCE WITH SUBPOENAS**

I, Roger J. Landsman, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.      I am employed by the United States Securities and Exchange Commission

("SEC" or "Commission") as an attorney in the Division of Enforcement at the SEC's

headquarters in Washington, DC.  I am admitted to the Bars of New York and the District of

Columbia.

2.       I submit this Declaration in support of the Commission's Reply in Support of

Application for an Order Requiring Compliance with Subpoenas directing Respondents Do

Kwon and Terraform Labs PTE Ltd. ("Terraform") to comply with investigative subpoenas

served upon Mr. Kwon and Terraform in connection with the Commission's non-public

investigation entitled *In the Matter of Mirror Protocol* (Internal File No. HO-14164) (the "Mirror

Protocol Investigation").  This Declaration is based upon my direct participation in the Mirror

Protocol Investigation.

SA1

3.     The staff has obtained evidence of an agreement entitled "SAFT (Simple Agreement for Farmed Tokens)" signed and executed by Do Kwon in his capacity as CEO of a Terraform wholly owned subsidiary, and a U.S. based digital asset trading platform. In exchange for the digital asset trading platform paying $200,000, it would receive MIR tokens based on a pre-defined formula set out in Schedule 1 of the SAFT. The agreement refers to this as the "Token Sale." This evidence can be found on a document with the Bates range ending 0001 to 0010.

4.     The staff has obtained evidence of an agreement entitled "Trust Company Custodial Services Agreement" signed and executed by Chang Joon Han, Terraform's Head of Finance and a U.S. based subsidiary of the U.S. based digital asset trading platform ("Trust Company"). The agreement is for the Trust Company to store certain digital assets on Terraform's behalf in exchange for a fee. This evidence can be found on a document with the Bates range ending 0031 to 0054.

5.     The staff obtained evidence of an email from a Terraform employee to the U.S. based digital asset trading platform and U.S. based outside representatives of the trading platform, indicating that about 15% of users of the Mirror Protocol come from the U.S. This email copies Terraform's U.S. based head of Business Development as well as at least one U.S. based employee for the digital asset trading platform. This evidence can be found on a document with the Bates range ending 0732 to 0733.

6.     Terraform's U.S.-based Director of Special Projects provided a presentation to the "Defi Summit" (https://www.defisummit.com/) in June 2021 that included an extensive discussion of Terraform's Mirror Protocol. Among other things, Terraform's Director of Special Projects discussed that the Mirror Protocol is Terraform's "answer for investments; it's powered

SA2

by synthetic assets." *See* DCentral Con, *Introducing the Terra Luna DeFi Ecosystem w/ SJ Park - DeFi Conference Day 2*, YouTube (June 29, 2021), https://www.youtube.com/watch?v=cU0Rv5jCjy0 (at 4:20). He specifically addressed the "mApple" synthetic asset, an asset designed by the Mirror Protocol to mimic the price of the equity securities of U.S.-based company, Apple, Inc. *Id*. at 5:25. Terraform's Director of Special Projects also discussed how Terraform uses the Mirror Protocol to "target everyday users with a Robinhood-like interface" and allows "entry into major asset classes of U.S. markets[.]" *Id*. at 6:05.

7.      Terraform's Business Development lead and its Head of Communications participated in an interview that publicized and explained the Mirror Protocol, noting that Terraform has "a team of [approximately] 40 people working full-time across Asia / US." The article explains that "Mirror is a synthetic assets protocol" and that Terraform plans to expand Mirror "beyond SE Asia and the typical US market." Terraform Labs (LUNA) — Telegram AMA — March 15, *Medium* (April 18, 2021), https://medium.com/gains-associates/terraform-labs-luna-telegram-ama-march-15-7fbbcbd4f1f2.


I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.


December 27, 2021

*Roger J. Landsman*

Roger J. Landsman

SA3



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

**DIVISION OF ENFORCEMENT**

September 17, 2021

<u>IN PERSON</u>
Terraform Labs PTE Ltd.
c/o Do Kwon, Co-founder and Director
Via Cavalier Courier & Process Service

Re: <u>In the Matter of Mirror Protocol, HO-14164</u>

Dear Mr. Kwon:

      The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to Terraform Labs PTE Ltd. ("Terra"), in connection with the above-referenced investigation.

      The enclosed subpoena requires Terra to produce documents to the SEC by October 4, 2021. Please deliver the materials by October 4, 2021 at 5:00 p.m. Eastern Time to:

      ENF-CPU
      U.S. Securities and Exchange Commission
      14420 Albemarle Point Place, Suite 102
      Chantilly, VA 20151-1750

      For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

      Please also provide a duplicate copy of any document production cover letters to me at LandsmanR@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

      Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if Terra prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native**

SA4

**software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

When producing the records, please consecutively number and mark each document produced with a symbol that identifies it as being produced by Terra.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe Terra has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of Terra complete a business records certification (a sample of which is enclosed) and return it with the document production. Execution of this certification may allow the Commission to introduce the documents provided by Terra in any subsequent judicial proceeding, without requiring the testimony of a records custodian.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that Terra provides to the Commission and has other important information.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

SA5

If you have any questions or would like to discuss this matter, you may contact me at (202) 551-7501. If Terra is represented by a lawyer, you should have Terra's lawyer contact me.

Sincerely,

Roger Landsman
Staff Attorney
Division of Enforcement

Enclosures:      Subpoena and Attachment
                 SEC Data Delivery Standards
                 SEC Form 1662
                 Business Records Certification

3

SA6



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Mirror Protocol, HO-14164

**To:**   Terraform Labs PTE Ltd.
c/o Do Kwon, Co-founder and Director
Via Cavalier Courier & Process Service

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than October 4, 2021 at 5:00 p.m. Eastern Time.

---

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: _Roger Landsman_   Digitally signed by Landsman, Roger Date: 2021.09.17 08:28:28 -04'00'    **Date:**   September 17, 2021

Roger Landsman, Staff Attorney
U.S. Securities and Exchange Commission
100 F. Street, NE
Washington, DC 20549

---

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, and Section 42(a) of the Investment Company Act of 1940.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

SA7

**SUBPOENA ATTACHMENT FOR TERRAFORM LABS PTE LTD.**
<u>In the Matter of Mirror Protocol, HO-14164</u>

September 17, 2021

**<u>Definitions</u>**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.    "Terraform Labs PTE Ltd." means the entity doing business under the name "Terraform Labs PTE Ltd." or "Terraform Labs" ("Terra"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.    "Mirror" means the entity doing business under the name "Mirror," "Mirror team," "Mirror Finance" or "Mirror Protocol" and is associated with the website "Mirror.Finance," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees , agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing (including but not limited to, Terra, Do Kwon, Daniel Shin, CJ Changjoon Han, SJ Park, Chee Lee, and Nicholas Platias, Rahul Abrol, Stanford Liu, William Chen, Sihyeok Yu, Evan Kereiakes, and Marco Di Maggio).

3.    "Mirror Assets" means all digital assets that can be created by or native to the Mirror Protocol or traded on terra.mirror.finance, including but not limited to Mirror tokens (ticker: MIR), all mAssets and LP Tokens.

4.    "Mirror Protocol" means the blockchain-based protocol or network operating under the same name or "Mirror."

5.    "Terra Assets" means all digital assets associated with the Terra blockchain and Terra ecosystem, including but not limited to Luna and UST.

6.    "UST" means the TerraUSD token.

7.    "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

8.    A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

9.     "Document" shall include, but is not limited to, all records and other tangible forms of expression in Your possession, custody, or subject to your control (*e.g.*,  personal

SA8

accounts, services, and devices used to conduct Terra's business), Electronically Stored Information, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

10. "Electronically Stored Information" or "ESI" includes electronically stored information of any kind, however created, in Your possession, custody or control, or subject to your control (*e.g.,* personal accounts, services, and devices used to conduct Terra's business), including, but not limited to, text, metadata, word processing files and spreadsheets (including all drafts, versions, revisions, and markups); digital communications (*e.g.,* emails, instant messaging, text messages, voicemails, direct messages, chat messages, tweets, Telegram channel messages, portals, dashboards, platforms, messages on cell phones, Slack, WhatsApp, WeChat, and Discord); database files (including data dictionaries, schemas, logs, reports, and unstructured data containing plain text); documents created, modified, stored, or maintained by drawing, computer-aided design software, document management software, or project management software, including, but not limited to drawings, graphs, and charts; accounting application documents; presentation software documents including, but not limited to slide shows or presentation "decks" and any embedded or related audio, video, notes, or outlines; documents created, modified, stored, or maintained by calendaring, task management, collaboration, group management, and personal information software (*e.g.,* Microsoft Outlook, Lotus Notes, Novell GroupWise); photograph, image, sound, video, and animation files; audiovisual recordings; facsimile files; data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated; network and server activity data including, but not limited to logging files, electronic mail logs, routing software logs, and access and IP address logs; and data created, modified, stored, or maintained in connection with development, rapid development, and prototyping software. For the purpose of this document request, Electronically Stored Information shall be considered to be in Your possession, custody or control if it is accessible to You, whether stored or maintained in a known physical location, on physical media, in the cloud, on Handheld devices, on backup or archival systems or in archival software (*e.g.,* .gho, .zip), or by any third party or service at Your direction or on Your behalf.

11. The term "Handheld" device consists of portable or mobile hardware devices to include wireless handheld devices, smartphones, personal digital assistants (PDA), tablets, Bluetooth, and other devices that provide computing, communications, electronic mail, telephone/fax, texting, instant messaging, paging, networking, or storage functionality.

SA9

This includes, but is not limited to, devices used as a calendar, organizer, and computer or for electronic data storage, iPhones, Android phones, and Blackberry devices.

12.    "Communication" means any correspondence, contact, discussion, e-mail, instant message, direct message, chat message, dashboard message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

13.    "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

14.    An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

15.    The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

16.    The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

17.    To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
    a.    the word "or" means "and/or";
    b.    the word "and" means "and/or";
    c.    the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
    d.    the masculine gender includes the female gender and the female gender includes the masculine gender; and
    e.    the singular includes the plural and the plural includes the singular.

**Instructions**

1.    Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All

SA10

responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.    For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.    Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.    In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.    Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.    Documents should be labeled with sequential numbering (bates-stamped).

7.    You must produce all Documents created during, or Concerning, the period from January 1, 2020 to the date of this subpoena, unless otherwise specified.

8.    The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.    You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.    For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

SA11

11.  This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

a.  its author(s);
b.  its date;
c.  its subject matter;
d.  the name of the Person who has the item now, or the last Person known to have it;
e.  the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
f.  the basis upon which you are not producing the responsive Document;
g.  the specific request in the subpoena to which the Document relates;
h.  the attorney(s) and the client(s) involved; and
i.  in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.  If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## Documents to be Produced

1.  Documents sufficient to identify all investors, token holders, owners or beneficial interest holders in MIR tokens, including but not limited to:

    a.  Date of investment or acquisition;

    b.  Amount of investment or consideration (by US dollar equivalent, and digital asset amount, if applicable);

2.  All presentations by Terra to investors, potential investors, token holders, or potential token holders in MIR tokens, including but not limited to, all Persons who entered into simple agreements for farmed tokens.

3.  All Communications with investors, potential investors, token holders, or potential token holders in MIR tokens Concerning Mirror or the Mirror Protocol.

4.  All Agreements between Terra and third parties regarding the sale or transfer of Mirror Assets, including, but not limited to, any agreement for farmed MIR tokens.

5.  Documents sufficient to show each unique marketing, promotional, or informational Document Concerning Mirror, the Mirror Protocol, or Mirror Assets, including but not limited to press releases, blog posts, web pages, videos and advertisements, including but not limited to relevant website addresses.

SA12

6.      Documents sufficient to identify LUNA tokens held by you or Terra.

7.      Documents sufficient to identify all public keys holding LUNA tokens responsive to Request. No. 6.

8.      Documents sufficient to identify the operators or owners of all Terra blockchain nodes or validators for MIR tokens or mAssets, including, but not limited to names and all contact information (phone number, address, email, etc.).

9.      All Agreements with ███████████ or ███████████████.

10.     Documents sufficient to identify any payments or transfer of assets between Terra and ███████████ or ███████████████.

11.     Any user or operating manuals, brochures or electronic text, coding journals, code change logs for any version or modification to the Mirror Protocol code that occurred or was contemplated.  The request includes, but is not limited to, any code or memorialization for:

        a.   All smart contracts;

        b.   All automated market makers;

        c.   All minting of tokens;

        d.   All staking of LP or MIR tokens; and

        e.   Any oracle.

12.     All audits of the Mirror Protocol code, including but not limited to, internal audits or audits conducted by any third-parties.

13.     Descriptions, charts, diagrams or Documents sufficient to identify the software and technology-related services and products that Mirror or Terra uses to develop, operate, and maintain Mirror and the Mirror Protocol, including programming software, smart contract programming, testing, and deployment, digital asset wallets.

14.     All current or previous governance proposals proposed, voted for, or endorsed by Terra or Mirror.

15.     Documents sufficient to identify all current or future projects, initiatives or upgrades for the Mirror Protocol.

16.     Documents sufficient to show the mechanism by which rewards or MIR tokens are allocated and communicated to staking users.

17.     Documents sufficient to identify, or a list of, all mAssets currently or previously minted by the Mirror Protocol.

SA13

18.   Documents sufficient to identify all fees received by Mirror from the Mirror Protocol.

19.   Documents sufficient to identify all fees received by Terra from Mirror or the Mirror Protocol.

20.   Documents sufficient to identify the distribution of any revenue or income generated through the Mirror Protocol, including, but not limited to, staking rewards and Liquidity Provider ("LP") commissions.

21.   All Documents Concerning the arbitrage of mAssets, including any analysis or description of how arbitrage theoretically works to maintain pricing.

22.   Documents sufficient to identify whether Mirror or the Mirror Protocol uses any services related to investment income or revenue or rewards to third parties for any kind of token.

23.   All organizational charts for personnel and corporate structure for Mirror and Terra.

24.   Organizational charts sufficient to identify all Terra employees who performed any work Concerning the Mirror Protocol.

25.   All articles of incorporation or by-laws for Terra.

26.   All Documents and Communications Concerning Mirror or the Mirror Protocol's use of ▮▮▮▮▮▮▮▮'s oracles or other services, including but not limited to, (i) any Agreements between Terra and ▮▮▮▮▮▮▮▮, (ii) Documents and Communications concerning the design and modification to Mirror Protocol in connection with oracles, (iii) Documents and Communications Concerning the design and modification of oracles, (iv)  Documents and Communications Concerning the use of data providers, (v) any Agreements with data providers, (vi) Documents Concerning payments to data providers, and (vii) Documents Concerning any remuneration that ▮▮▮▮▮▮▮▮ receives for its oracles.

27.   All non-public Communications Concerning Mirror on Discord, Telegram and Github.

SA14



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

**DIVISION OF ENFORCEMENT**

September 17, 2021

<u>IN PERSON</u>
Do Kwon
Via Cavalier Courier & Process Service

Re: <u>In the Matter of Mirror Protocol, HO-14164</u>

Dear Mr. Kwon:

The staff of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to provide us with documents and give sworn testimony.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment or both.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to provide us the documents described in the attachment to the subpoena. You must provide these documents by October 4, 2021. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

You should produce each and every document in your possession, custody, or control, including any documents that are not in your immediate possession but that you have the ability to obtain. All responsive documents shall be produced as they are kept in the usual course of business, and shall be organized and labeled to correspond with the numbered paragraphs in the subpoena attachment. In that regard, documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the document boundaries.

Documents responsive to this subpoena may be in electronic or paper form. Electronic documents such as email should be produced in accordance with the attached document entitled

SA15

SEC Data Delivery Standards (the "Standards"). If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible but in any event before producing documents. **All electronic documents responsive to the document subpoena, including all metadata, must also be secured and retained in their native software format and stored in a safe place.** The staff may later request or require that you produce the native format.

     For documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy documents and produce them in an electronic format consistent with the Standards. Alternatively, you may send us photocopies of the documents in paper format. **If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.** The staff may later request or require that you produce the originals.

     Whether you scan or photocopy documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

     If you <u>do</u> send us scanned or photocopied documents, please put an identifying notation on each page of each document to indicate that you produced it, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please do not add any identifying notations.

     In producing a photocopy of an original document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original document, photocopies of the original document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

*Do I need to send anything else?*

     You should enclose a list briefly describing each item you send. The list should state to which numbered paragraph(s) in the subpoena attachment each item responds. A copy of the subpoena should be included with the documents that are produced.

     Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

SA16

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. Correspondence should reference case number, case name and requesting SEC staff member.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
- the reason you did not produce the item; and
- the specific request in the subpoena to which the document relates.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should identify the attorney and client involved. If you withhold anything on the basis of the work product doctrine, you should also identify the litigation in anticipation of which the document was prepared.

If documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such documents and give the date on which they were lost, discarded or destroyed.

*Where should I send the materials?*

Please send the materials to:

> ENF-CPU
> U.S. Securities and Exchange Commission
> 14420 Albemarle Point Place, Suite 102
> Chantilly, VA 20151-1750

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: <u>ENF-CPU@sec.gov</u>.

Please also provide a duplicate copy of any document production cover letters to Roger Landsman at <u>LandsmanR@sec.gov</u>. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

SA17

**Testifying**

*Where and when do I testify?*

The subpoena requires you to come to the Commission's offices at, 100 F. Street, NE, Washington, DC 20549 at 9:30 a.m. Eastern Time on October 27, 2021 to testify under oath in the matter identified on the subpoena.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. If you are represented by a lawyer when you testify, your lawyer may advise and accompany you when you testify. We cannot give you legal advice.

*What will the Commission do with the materials I send and/or the testimony I provide?*

The enclosed SEC Form 1662 explains how we may use the information you provide to the Commission. This form also has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

SA18

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (202) 551-7501. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

*Roger Landsman*

Roger Landsman
Staff Attorney
Division of Enforcement

Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662

SA19



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Mirror Protocol, HO-14164

**To:**   Do Kwon
Via Cavalier Courier & Process Service

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than October 4, 2021 at 5:00 p.m. Eastern Time.

☒   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

Securities and Exchange Commission, 100 F. Street, NE, Washington, DC 20549 October 27, 2021 at 9:30 a.m. Eastern Time.

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena. Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: _Roger Landsman_   Digitally signed by Landsman, Roger Date: 2021.09.17 08:31:54 -04'00'          Date:   September 17, 2021

Roger Landsman, Staff Attorney
U.S. Securities and Exchange Commission
100 F. Street, NE
Washington, DC 20549

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, and Section 42(a) of the Investment Company Act of 1940.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

SA20

**SUBPOENA ATTACHMENT FOR DO KWON**
In the Matter of Mirror Protocol, HO-14164

September 17, 2021

**Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.     "Terraform Labs PTE Ltd." means the entity doing business under the name "Terraform Labs PTE Ltd." or "Terraform Labs" ("Terra"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.     "Mirror" means the entity doing business under the name "Mirror," "Mirror team," "Mirror Finance" or "Mirror Protocol" and is associated with the website "Mirror.Finance," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees , agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing (including but not limited to, Terra, Do Kwon, Daniel Shin, CJ Changjoon Han, SJ Park, Chee Lee, and Nicholas Platias, Rahul Abrol, Stanford Liu, William Chen, Sihyeok Yu, Evan Kereiakes, and Marco Di Maggio).

3.     "Mirror Assets" means all digital assets that can be created by or native to the Mirror Protocol or traded on terra.mirror.finance, including but not limited to Mirror tokens (ticker: MIR), all mAssets and LP Tokens.

4.     "Mirror Protocol" means the blockchain-based protocol or network operating under the same name or "Mirror."

5.     "Terra Assets" means all digital assets associated with the Terra blockchain and Terra ecosystem, including but not limited to Luna and UST.

6.     "UST" means the TerraUSD token.

7.     "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

8.     A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

9.      "Document" shall include, but is not limited to, all records and other tangible forms of expression in Your possession, custody, or subject to your control (*e.g.*,  personal

<div align="right">SA21</div>

accounts, services, and devices used to conduct Terra's business), Electronically Stored Information, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

10.    "Electronically Stored Information" or "ESI" includes electronically stored information of any kind, however created, in Your possession, custody or control, or subject to your control (*e.g.*, personal accounts, services, and devices used to conduct Terra's business), including, but not limited to, text, metadata, word processing files and spreadsheets (including all drafts, versions, revisions, and markups); digital communications (*e.g.*, emails, instant messaging, text messages, voicemails, direct messages, chat messages, tweets, Telegram channel messages, portals, dashboards, platforms, messages on cell phones, Slack, WhatsApp, WeChat, and Discord); database files (including data dictionaries, schemas, logs, reports, and unstructured data containing plain text); documents created, modified, stored, or maintained by drawing, computer-aided design software, document management software, or project management software, including, but not limited to drawings, graphs, and charts; accounting application documents; presentation software documents including, but not limited to slide shows or presentation "decks" and any embedded or related audio, video, notes, or outlines; documents created, modified, stored, or maintained by calendaring, task management, collaboration, group management, and personal information software (*e.g.*, Microsoft Outlook, Lotus Notes, Novell GroupWise); photograph, image, sound, video, and animation files; audiovisual recordings; facsimile files; data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated; network and server activity data including, but not limited to logging files, electronic mail logs, routing software logs, and access and IP address logs; and data created, modified, stored, or maintained in connection with development, rapid development, and prototyping software.  For the purpose of this document request, Electronically Stored Information shall be considered to be in Your possession, custody or control if it is accessible to You, whether stored or maintained in a known physical location, on physical media, in the cloud, on Handheld devices, on backup or archival systems or in archival software (*e.g.*, .gho, .zip), or by any third party or service at Your direction or on Your behalf.

11.    The term "Handheld" device consists of portable or mobile hardware devices to include wireless handheld devices, smartphones, personal digital assistants (PDA), tablets, Bluetooth, and other devices that provide computing, communications, electronic mail, telephone/fax, texting, instant messaging, paging, networking, or storage functionality.

SA22

This includes, but is not limited to, devices used as a calendar, organizer, and computer or for electronic data storage, iPhones, Android phones, and Blackberry devices.

12. "Communication" means any correspondence, contact, discussion, e-mail, instant message, direct message, chat message, dashboard message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

13. "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

14. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

15. The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

16. The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

17. To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
   a.     the word "or" means "and/or";
   b.     the word "and" means "and/or";
   c.     the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
   d.     the masculine gender includes the female gender and the female gender includes the masculine gender; and
   e.     the singular includes the plural and the plural includes the singular.

## Instructions

1. Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All

SA23

responsive electronic Documents, including all metadata, should also be produced in their native software format.

2.    For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.    Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.    In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.    Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6.    Documents should be labeled with sequential numbering (bates-stamped).

7.    You must produce all Documents created during, or Concerning, the period from January 1, 2020 to the date of this subpoena, unless otherwise specified.

8.    The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.    You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff in connection with this matter. If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.   This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege

SA24

– you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

a.     its author(s);
b.     its date;
c.     its subject matter;
d.     the name of the Person who has the item now, or the last Person known to have it;
e.     the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
f.     the basis upon which you are not producing the responsive Document;
g.     the specific request in the subpoena to which the Document relates;
h.     the attorney(s) and the client(s) involved; and
i.     in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.     If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## Documents to be Produced

1.     Documents sufficient to identify all investors, token holders, owners or beneficial interest holders in MIR tokens, including but not limited to:

a.  Date of investment or acquisition;

b.  Amount of investment or consideration (by US dollar equivalent, and digital asset amount, if applicable);

2.     All presentations by Terra to investors, potential investors, token holders, or potential token holders in MIR tokens, including but not limited to, all Persons who entered into simple agreements for farmed tokens.

3.     All Communications with investors, potential investors, token holders, or potential token holders in MIR tokens Concerning Mirror or the Mirror Protocol.

4.     All Agreements between Terra and third parties regarding the sale or transfer of Mirror Assets, including, but not limited to, any agreement for farmed MIR tokens.

5.     Documents sufficient to show each unique marketing, promotional, or informational Document Concerning Mirror, the Mirror Protocol, or Mirror Assets, including but not limited to press releases, blog posts, web pages, videos and advertisements, including but not limited to relevant website addresses.

6.     Documents sufficient to identify LUNA tokens held by you or Terra.

SA25

7.    Documents sufficient to identify all public keys holding LUNA tokens responsive to Request. No. 6.

8.    Documents sufficient to identify the operators or owners of all Terra blockchain nodes or validators for MIR tokens or mAssets, including, but not limited to names and all contact information (phone number, address, email, etc.).

9.    All Agreements with ████████ or ████████████ .

10.   Documents sufficient to identify any payments or transfer of assets between Terra and ████████ or ████████████ .

11.   Any user or operating manuals, brochures or electronic text, coding journals, code change logs for any version or modification to the Mirror Protocol code that occurred or was contemplated. The request includes, but is not limited to, any code or memorialization for:

    a.   All smart contracts;

    b.   All automated market makers;

    c.   All minting of tokens;

    d.   All staking of LP or MIR tokens; and

    e.   Any oracle.

12.   All audits of the Mirror Protocol code, including but not limited to, internal audits or audits conducted by any third-parties.

13.   Descriptions, charts, diagrams or Documents sufficient to identify the software and technology-related services and products that Mirror or Terra uses to develop, operate, and maintain Mirror and the Mirror Protocol, including programming software, smart contract programming, testing, and deployment, digital asset wallets.

14.   All current or previous governance proposals proposed, voted for, or endorsed by Terra or Mirror.

15.   Documents sufficient to identify all current or future projects, initiatives or upgrades for the Mirror Protocol.

16.   Documents sufficient to show the mechanism by which rewards or MIR tokens are allocated and communicated to staking users.

17.   Documents sufficient to identify, or a list of, all mAssets currently or previously minted by the Mirror Protocol.

18.   Documents sufficient to identify all fees received by Mirror from the Mirror Protocol.

SA26

19. Documents sufficient to identify all fees received by Terra from Mirror or the Mirror Protocol.

20. Documents sufficient to identify the distribution of any revenue or income generated through the Mirror Protocol, including, but not limited to, staking rewards and Liquidity Provider ("LP") commissions.

21. All Documents Concerning the arbitrage of mAssets, including any analysis or description of how arbitrage theoretically works to maintain pricing.

22. Documents sufficient to identify whether Mirror or the Mirror Protocol uses any services related to investment income or revenue or rewards to third parties for any kind of token.

23. All organizational charts for personnel and corporate structure for Mirror and Terra.

24. Organizational charts sufficient to identify all Terra employees who performed any work Concerning the Mirror Protocol.

25. All articles of incorporation or by-laws for Terra.

26. All Documents and Communications Concerning Mirror or the Mirror Protocol's use of ███████████'s oracles or other services, including but not limited to, (i) any Agreements between Terra and ████████████, (ii) Documents and Communications concerning the design and modification to Mirror Protocol in connection with oracles, (iii) Documents and Communications Concerning the design and modification of oracles, (iv) Documents and Communications Concerning the use of data providers, (v) any Agreements with data providers, (vi) Documents Concerning payments to data providers, and (vii) Documents Concerning any remuneration that ██████████ receives for its oracles.

27. All non-public Communications Concerning Mirror on Discord, Telegram and Github.

SA27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                         Applicant,

         -v-

TERRAFORM LABS PTE Ltd. and
DO KWON,

                      Respondents.

21-MC-810 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

On February 17, 2022, this Court granted the SEC's application for an order requiring

compliance with investigative subpoenas served on Respondents Terraform and its chief

executive officer, Do Kwon. The Court stayed its order for 14 days, to March 3, 2022.

Respondents have requested a stay pending appeal, which the SEC opposes. (*See* Dkt. Nos. 31-

34.)

In determining whether to grant a stay pending appeal, courts consider (1) likelihood of

success on the merits, (2) irreparable injury absent a stay, (3) substantial prejudice to the other

parties interested in the proceeding, and (4) the public interest. *In re World Trade Center

Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). Upon consideration of these factors, the

Court concludes that Respondents have not met their burden of showing that a further stay is

warranted. First, for the reasons explained in its oral ruling (Dkt. No. 35), the Court does not

believe that Respondents are likely to prevail on the merits of an appeal. Second, the Court is

not persuaded that Respondents will be irreparably injured absent a stay, for substantially the

reasons set forth in the SEC's letter brief. (Dkt. No. 33.) Finally, an extended delay of

enforcement of the subpoenas risks impeding the SEC's Mirror Protocol investigation and the associated public interest in the Commission's enforcement functions.

Accordingly, Respondents' request for a further stay pending appeal (Dkt. No. 31) is denied.

SO ORDERED.

Dated: March 1, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge

SA29