# 22-368

## IN THE
## United States Court of Appeals
## FOR THE
## Second Circuit

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Petitioner-Appellee*,

v.

TERRAFORM LABS PTE, LTD. AND DO KWON,

*Respondents-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (HON. J. PAUL OETKEN)

### REPLY BRIEF OF RESPONDENTS-APPELLANTS

Douglas W. Henkin
*Counsel of Record*
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6832

*Counsel for Appellants Terraform Labs Pte, Ltd. and Do Kwon*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................4

I.    THE SEC VIOLATED RULE OF PRACTICE 150(b) .................................5

    A.    Service Was Not Valid Because The SEC Violated Its Rules of
Practice ....................................................................................5

    B.    The SEC's Arguments About When Subpoenas Can Be Issued
Are Irrelevant To This Case ...................................................7

    C.    Appellants' Arguments Are Based On The Text Of The Rules
Of Practice And The SEC Cannot Salvage Its Position By
Rewriting History ...................................................................9

    D.    The SEC's Arguments Regarding Voluntary Cooperation Do
Not Excuse The SEC's Violation Of Rule Of Practice 150(b) ...........13

II.   THE DISTRICT COURT ERRED IN FINDING THAT
APPELLANTS ARE SUBJECT TO PERSONAL JURISDICTION ...........14

    A.    U.S. Securities Law Does Not Apply Outside the U.S. ......................15

    B.    Mr. Kwon's Mere Presence In New York Is Irrelevant ......................16

    C.    The SEC Did Not Establish Minimum Contacts ................................17

CONCLUSION .....................................................................................21

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 32(a) .........................................................22

CERTIFICATE OF SERVICE ...............................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Binance*,
No. 20-cv-2803, 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ...................14, 15

*Badgerow v. Walters*,
No. 20-1143, 2022 WL 959675 (U.S. Mar. 31, 2022) ................................4, 5, 6

*Balestra v. Atbcoin LLC*,
380 F. Supp. 3d 340 (S.D.N.Y. 2019) ...............................................................18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) ..............................................................................15

*Digital Realty Trust Inc. v. Somers*,
138 S.Ct. 767 (2018)........................................................................................8, 9

*Doe v. SEC*,
No. 21-1097, 2022 WL 880243 (D.C. Cir. Mar. 25, 2022) (*per curiam*)...........................................................................................................12

*FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson*,
636 F.2d 1300 (D.C. Cir. 1980 .........................................................................21

*Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*,
No. 21 Civ. 761, 2022 WL 409089 (S.D.N.Y. Feb. 9, 2022)............................17

*Holsworth v. BPROTOCOL Foundation*,
No. 20 Civ. 2810, 2021 WL 706549 (Feb. 22, 2021)........................................18

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
925 F.2d 556 (2d Cir. 1991) .............................................................................16

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010) ............................*passim*

*Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
760 F.3d 151 (2d Cir. 2014) ...............................................................11

*Owen v. Elastos Foundation*,
No. 19-cv-5462-GHW, 2021 WL 5868171 (S.D.N.Y. Dec. 9,
2021) ...........................................................................................................19

*Pinker v. Roche Holdings, Ltd.*,
292 F.3d 361 (3d Cir. 2002) ................................................................17

*RNR Enterprises Inc. v. SEC*,
122 F.3d 93 (2d Cir. 1997) ....................................................................4

*SEC v. Alpine Sec. Corp.*,
982 F.3d 68 (2d Cir. 2020) ...................................................................11

*SEC v. PlexCorps*,
No. 17-CV-7007, 2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018) .......................19

## Statutes

28 United States Code
§ 1782...............................................................................................15, 16

## Rules and Regulations

Federal Rules of Civil Procedure
Rule 1 ..........................................................................................................10
Rule 4(k)(1)...............................................................................................10

SEC's Rules of Practice
Rule 102 ........................................................................................................6
Rule 102(d) ..........................................................................................*passim*
Rule 150(b) ..........................................................................................*passim*
Rule 150(d) ....................................................................................................5
Rule 150(e) ..................................................................................................12

# INTRODUCTION[1]

The SEC Brief is based on a fundamental misstatement of Appellants'

arguments relating to the Rules of Practice. Appellants argue that (a) if the SEC

wanted to serve Mr. Kwon personally it had to secure an order from the

Commission[2] and (b) Dentons did not decline to accept service because the SEC

never even asked the question.[3] The SEC asserts that Appellants "contend not

only that Commission Rule of Practice 150(b) … did not allow hand-service on

Kwon because Enforcement was only permitted to serve their counsel, but also that

service on their counsel was invalid because their counsel declined to accept it"

and that a "plain reading" of the SEC's Rules of Practice "mandates that a party

cannot have counsel appear in a capacity that precludes direct service on the party,

---

[1]   Capitalized terms not defined herein have the meanings set forth in the Brief of Respondents-Appellants Terraform Labs Pte, Ltd. and Do Kwon, dated March 15, 2022 ("OB"). Citations to the Brief of Appellee Securities and Exchange Commission are in the form "SEC Br. ___."

[2]   The SEC concedes this never happened. See SEC Br. 26 ("Neither the Commission nor a hearing officer ordered service be made on Appellants directly.").

[3]   The SEC seems to believe that repetition makes something true, littering its brief with assertions that Dentons declined to accept service. *See, e.g.*, SEC Br. 3 ("when that party's counsel is unwilling to accept service"); 23 ("counsel … declined to accept service"). One cannot "decline" to do something they are never asked.

1

while counsel simultaneously declines to accept service." SEC Br. 1–2. None of that is true.

The SEC tries to dodge what it means to be represented by counsel when the SEC is acting pursuant to a formal order of investigation, suggesting that entities that engage counsel in such circumstances are trying to "hide behind" counsel. In addition to contradicting (a) the SEC's own rule that anyone can be represented by counsel in such circumstances and (b) the fact (confirmed by the SEC's rule) that sophisticated entities always deal with U.S. regulators through counsel, the SEC's position sends the perverse message that the SEC deems retaining counsel irrelevant unless counsel agrees to accept service of any document the SEC might wish to serve under any circumstances (SEC Br. 2), even initial compulsory process. On its face that position contravenes the Constitution, precedent as to service, the SEC's organic statute, and the SEC's own rules.[4] Worst of all, the

---

[4] Indeed, the SEC's actions in this space have caused members of Congress to question whether the SEC is exceeding its statutory authority. *See* https://emmer.house.gov/_cache/files/0/c/0c7fc863-7916-4b19-bc44-52bef772287e/9B0B9D1CA9B3C215DDC762DF5B0F6864.3.16.22.emmer.sec.letter.pdf ("It appears there has been a recent trend towards employing the Enforcement Division's investigative functions to gather information from unregulated cryptocurrency and blockchain industry participants in a manner inconsistent with the Commission's standards for initiating investigations."). As the SEC concedes, TFL (a software company) is not registered with the SEC. SEC Br. 9.

SEC's argument that an appearance by counsel necessarily includes acceptance of service is inconsistent with the text of Rule of Practice 102(d)(2), in which the word "service" *does not appear*.

The SEC Brief is also internally inconsistent.[5]  The SEC first argues that the Rules of Practice "require[] counsel to accept service" (*id*. 2), but later argues that Appellants "mistakenly contend the Commission's interpretation would require counsel in an investigation to accept service on behalf of a client" (*id*. 28).  Both cannot be true.  And this is especially important in the context of service of initial compulsory process:  If the SEC intends that Rule of Practice 150(b) "requires counsel to accept service" (*id*. 2) of initial compulsory process, the rule should say that, because parties need to be on notice if the SEC's view is that being represented by counsel is effectively an agreement to waive the protections

---

[5]  The SEC Brief is also inconsistent with the record.  The SEC contends that Appellants produced no documents voluntarily, despite Appellants providing extensive references to publicly-available documents the SEC does not contend were non-responsive.  *Compare* SEC Br. 12 *with* A108.  The SEC also asserts that Mr. Kwon was "unable or unwilling" to provide information during his voluntary interview about "numerous topics," but does not contest Appellants' description of the extensive list of topics discussed during the interview.  *Compare* SEC Br. 11 n.10 *with* A107–08.

The parties disagree about evidence that was not properly before the District Court, which will be discussed more fully below.  *See, e.g.,* SEC Br. 9 n.9 (citing article never tendered to the District Court about a topic not raised in the SEC's Application); *id*. 12–13 (discussing materials the SEC concedes were not before the District Court).

guaranteed by Rule of Practice 150(b). Rule of Practice 150(b) does not mean whatever the SEC would like it to mean when convenient.

The SEC's arguments regarding personal jurisdiction also fail for two reasons. *First*, they depend primarily on the validity of service itself ("Kwon is subject to jurisdiction because he was served in New York," *id*. 2); if service was improper, the SEC's primary jurisdictional argument falls away (although in that case there is no need to address personal jurisdiction, either). *Second*, the SEC's assertions regarding what suffices for personal jurisdiction are inconsistent with basic precedents relating to personal jurisdiction and the extraterritorial applicability of the federal securities laws (which overlap analytically in the context of digital assets).

## ARGUMENT

Point I of the SEC Brief is easily dispensed with: *RNR Enterprises Inc. v. SEC*, 122 F.3d 93, 96 (2d Cir. 1997), did not consider whether the SEC had violated its own rules. Moreover, this Court denied the SEC's suggestion of mootness in part because the investigational powers of an administrative agency present "far-reaching" issues. *Id*. Whether an agency has followed its own rules or improperly changed a prior litigation interpretation of those rules are far-reaching issues deserving of careful consideration by this Court, not the low level of scrutiny the SEC argues for.

## I.  THE SEC VIOLATED RULE OF PRACTICE 150(b)

The core issue here—interpreting the Rules of Practice—is similar to statutory construction.  *Badgerow v. Walters*, No. 20-1143, 2022 WL 959675 (U.S. Mar. 31, 2022), is the Supreme Court's latest discussion of how to give meaning to all parts of a statute when different parts say different things.  A court in such circumstances must proceed "methodically" through the relevant statutory text and give meaning to *both* the presence of specific language and the absence of such language, and reject textually implausible interpretations, particularly interpretations that do not comport with what the text says.  *Id*. at *5–6.

### A.  Service Was Not Valid Because The SEC Violated Its Rules of Practice

The relevant Rules of Practice are not in dispute (SEC Br. 17–20), the dispute relates to how they apply when a party is represented by counsel (which is not disputed here) in the context of a request for voluntary cooperation.  Because it is convenient for the SEC to do so, it skips over the first relevant part of Rule of Practice 150—subpart (b), "Upon a person represented by counsel"—and starts with subpart (d), "Additional methods of service."  *Id*. 18.  The principles laid out in *Badgerow* explain why this mode of interpretation is not even the right way to begin.

The SEC's argument that service was proper also fails for other reasons.  *First*, the SEC's interpretation of Rule of Practice 102(d) fails under *Badgerow*.

Subsection (d)(1) applies to persons appearing before the SEC *pro se*, and

subsection (d)(2) applies to attorneys appearing for a party. But only subsection

(d)(1) contains the language the SEC relies on to argue that a notice of appearance

must include an address for service—subsection (d)(2) does not contain the same

language. Under *Badgerow's* reasoning, the only proper reading of Rule of

Practice 102(d) as a whole is that attorneys appearing for clients are not required to

agree to accept service.

*Second*, the SEC ignores its prior litigation position that directly contradicts

the interpretation of Rule of Practice 102 it now asserts. *See* OB 21–22. Indeed,

this is why the SEC's argument that Appellants' interpretation would "nullify

portions of the Commission's Rules" (SEC Br. 23) is wrong. The SEC's prior

litigation position regarding Rule of Practice 102 shows that Appellants'

interpretation is not only consistent with the Rules of Practice, it is the same

position the SEC itself took in that case. *See* OB 21–22.

*Third*, the SEC ignores what Rule of Practice 150(b) actually says: When a

party is represented by counsel, the SEC has two choices when it wants to serve

initial compulsory process on that party—it can get an order from the SEC to effect

personal service, or it can ask counsel to accept service; there is no other way to

read the rule. But the SEC did neither. That is problematic in general, but it is

especially problematic when the attempted service is of initial compulsory process.

6

*Fourth*, the SEC ignores the undisputed fact that, for parties represented by counsel in the context of requests for voluntary cooperation, there is no way to "file" a notice of appearance under Rule of Practice 102(d). OB 18, 20–21. The SEC elides this point (SEC Br. 20 & n.16), but this is a problem of its own making: Rule of Practice 150(b) applies to "parties represented by counsel," and if other rules need to be revised to address the fact that parties responding to voluntary requests through counsel cannot file notices of appearance, the SEC must address that through notice-and-comment rulemaking, not litigation. *See* OB 24. This is one reason Appellants pointed out the significance of this dispute—if being represented by counsel in responding to requests for voluntary cooperation could be deemed to require "some form of notice of willingness to accept service" of anything the SEC might later seek to serve (SEC Br. 22), then few (if any) rational actors would respond to such requests with other than "no" (which is consistent with Congress's recently expressed concern with these very types of requests, *see supra* note 4).

## B. The SEC's Arguments About When Subpoenas Can Be Issued Are Irrelevant To This Case

The SEC argues that Appellants are wrong because some investigative subpoenas are served after "administrative proceeding[s]" have commenced, in which case there is a docket to file a notice of appearance. SEC Br. 21–23. But that has nothing to do with this case, where there is *not* an administrative

proceeding.  Indeed, *there could not be* an administrative proceeding here, because (as the SEC concedes) TFL is not registered with the SEC.  It is thus surprising that the SEC makes this argument, because it actually strengthens Appellants' position: In the circumstances the SEC hypothesizes, there is an existing docket for an administrative proceeding in which the SEC has already secured jurisdiction over the respondent(s) represented by counsel—in other words, the SEC's hypothetical is just like ordinary litigation in which, *after a summons and complaint are properly served on a defendant and counsel have appeared*, further papers, including document requests, are served on counsel.  But that is not this case, in which the SEC requested voluntary cooperation, got it, and then tried to sidestep Rule of Practice 150(b).[6]

The interpretation the SEC offers is thus anything but "straightforward" (SEC Br. 22).  And the SEC's reliance on *Digital Realty Trust Inc. v. Somers*, 138 S.Ct. 767 (2018), is puzzling.  *Somers* was about whether the anti-retaliation provision of Dodd–Frank Wall Street Reform and Consumer Protection Act

---

[6]    This also disposes of the SEC's Point II(E)(3).  The SEC's position that any notice of appearance that satisfies Rule of Practice 102(d) means that counsel agrees to accept service of any documents, including compulsory process, even for clients not subject to service under the '34 Act (because otherwise the SEC would not need to request voluntary cooperation) (SEC Br. 29) cannot be squared with the text of Rule of Practice 102(d), and pressing such a position presents such clients with a Hobson's choice.

8

extended to individuals who had not reported a violation of the securities laws to

the SEC and therefore did not satisfy the statute's definition of a "whistleblower."

*Somers* does not stand for the proposition that, in a vacuum, "a provision has

meaning even if the number of people affected by it is 'relatively limited'" (SEC

Br. 22 n.18). What the Supreme Court held was:

> In any event, even if the number of individuals qualifying
> for protection under clause (iii) is relatively limited, "[i]t
> is our function to give the statute the effect its language
> suggests, however modest that may be." *Morrison v.
> National Australia Bank Ltd.,* 561 U.S. 247, 270, 130
> S.Ct. 2869, 177 L.Ed.2d 535 (2010).

138 S. Ct. at 780. And it is interesting that the Supreme Court relied on *Morrison*

for that part of *Somers*, because the territorial applicability of what the SEC is

trying to do here is a separate issue. *See infra* Point II.

### C. Appellants' Arguments Are Based On The Text Of The Rules Of Practice And The SEC Cannot Salvage Its Position By Rewriting History

The SEC's argument that Appellants' interpretation would "turn common

practice on its head" (SEC Br. 23–25) ignores a simple fact:  Rule of Practice

150(b) includes a very specific requirement that the SEC obtain an order by the

commissioners to allow direct service on a party represented by counsel.  The SEC

could have avoided this issue in its entirety by simply getting such an order; why it

did not is anyone's guess, but may have something to do with the fact that the

commissioners are not united in their views regarding cryptocurrency.[7]  Whatever

the reason, that simple fact negates its "absurdity" argument (SEC Br. 23).

The argument that the Rules of Practice "were designed in *significant* ways"

to mirror the Federal Rules of Civil Procedure (*id*. 24, emphasis added) proves too

much because the Rules of Practice specifically include the requirement of an

order for personal service of a represented party.  There is a simple explanation for

this (and other differences) that the SEC Brief never touches on:  The Rules of

Practice apply to both investigations (which may never lead to enforcement

proceedings) and SEC administrative enforcement proceedings (which do not take

place in courts), whereas the Federal Rules of Civil Procedure only apply to federal

court litigations.  *E.g.,* Fed. R. Civ. P. 1 ("These rules govern the procedure in all

civil actions and proceedings in the United States district courts … .").  That makes

all the difference in the world where the service that is attempted is of initial

compulsory process.  The SEC's references to cases about process servers and

alternative service (SEC Br. 24 nn. 20–21) are inapposite for two reasons.  *First*,

this dispute is not about who attempted to serve Mr. Kwon, it is about whether

---

[7]     *See, e.g.,* https://www.natlawreview.com/article/sec-commissioners-continue-debate-regulating-crypto ("In her remarks, Ms. Peirce criticized the SEC for embracing a "strategic ambiguity" approach to crypto regulation that prioritizes enforcement action to regulatory clarity.") (last visited April 4, 2022).

such service could be made by anyone acting for the SEC.  *Second*, alternative service is reserved for circumstances in which the methods of service set forth in Fed. R. Civ. P. 4—which, when followed "establish[] personal jurisdiction over a defendant," Fed. R. Civ. P. 4(k)(1)—have failed, as the SEC's own citations make clear (SEC Br. 24 n.21).  But the SEC concedes that it never tried to comply with Rule of Practice 150(b), and so this argument supports Appellants' position.

The SEC's deference argument (SEC Br. 25) is a non-starter.  The SEC's attempt to distance itself from its prior position (SEC Br. 30 n.25) neither addresses the issue Appellants raised—trying to serve compulsory process on a represented party other than in strict compliance with Rule of Practice 150(b)—nor the deference problems it creates.  Deference to the SEC's current position is not appropriate because the current position is neither reasonable nor correct, and is inconsistent with its prior expressed position.  *See SEC v. Alpine Sec. Corp.*, 982 F.3d 68, 77 n.34 (2d Cir. 2020).  Indeed, because the SEC's prior litigation position contradicts the position it takes here (OB 21–22), it defeats the SEC's request for deference.  *See Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 163 (2d Cir. 2014) ("We give substantially less deference to post hoc interpretations offered only for purposes of litigation, particularly when those interpretations represent a departure from prior norms.").

11

Similarly, the SEC could have written the Rules of Practice to state, specifically, that representation by counsel in connection with requests for voluntary cooperation requires agreements to accept service, but it did not do so (and the SEC does not even attempt to argue otherwise). Even if Rule of Practice 102(d)(2) contained the word "service" (it does not), that would create ambiguity that, in light of the circumstances, would have to be construed against the SEC. *Cf. Doe v. SEC*, No. 21-1097, 2022 WL 880243, at *4 (D.C. Cir. Mar. 25, 2022) (*per curiam*) ("Nor did the Commission reserve to itself any residual or catch-all authority … ."). Indeed, the record here demonstrates that the SEC's argument—including its argument that an email to Dentons that never stated that it was an attempt to "serve" Appellants through Dentons (OB 11)—was intended to do exactly that (SEC Br. 26–27) is precisely the sort of convenient litigation position or *post hoc* rationalization that precludes deference. *See Doe*, 2022 WL 880243, at *6. Rule of Practice 150(e) addresses only "when" service is complete, not what makes something "service" in the first instance. Because the email the SEC now contends effected service on Dentons asserts (incorrectly) that "service" had been made on Mr. Kwon, it cannot be interpreted to have sought to serve Appellants through Dentons, and Rule of Practice 150(e) is irrelevant.[8]

---

[8]   The SEC's argument regarding the email to Dentons is sophistry:  Whether there are "magic words required with transmittal of subpoenas" (SEC Br.

**D.    The SEC's Arguments Regarding Voluntary Cooperation Do Not Excuse The SEC's Violation Of Rule Of Practice 150(b)**

Although Point II(E)(1) of the SEC Brief misstates and mixes up Appellants' arguments, it is most interesting for what it does not do:  Dispute that, if the SEC prevails here, fewer parties asked to provide voluntary cooperation will do so.

Appellants did not argue that their voluntary cooperation "enabled" the SEC to avoid seeking documents through IOSCO (SEC Br. 27), they argued that the SEC could, at any time, have sought assistance from a foreign regulator through IOSCO; Appellants expressly stated that the IOSCO process was available, but that the SEC seemed to have decided not to utilize it.  (OB 3, n.7)

The SEC's argument on this point seems to take great pains to evade addressing the IOSCO issue head-on.  Appellants will thus clarify their position for this Court:  Presented with a valid IOSCO request from a foreign regulator with jurisdiction over them, they would comply with it.

The SEC also argues that Appellants cannot use their representation by counsel "to block direct service" (SEC Br. 29), but that is a straw man.  Appellants received requests for voluntary cooperation and complied with them while

---

27) is not the issue.  The transmittal email unambiguously stated the SEC's position that Subpoenas had been "served" on Mr. Kwon and that copies were attached.  A114.  The SEC chose its position when it attempted service on Mr. Kwon and cannot retroactively turn what was clearly a courtesy-copy email into a separate attempt to serve initial compulsory process.

represented by counsel, which makes them parties represented by counsel for the purposes of Rule of Practice 150.  It is not the representation that "block[s] direct service," it is the SEC's conceded failure to comply with Rule of Practice 150(b).

*       *       *

The SEC's failure to act in compliance with Rule of Practice 150(b) means that the attempted service on Mr. Kwon was invalid.

## II. THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS ARE SUBJECT TO PERSONAL JURISDICTION

The SEC concedes that Appellants do not create mAssets, users of the Mirror Protocol do (SEC Br. 4) and that TFL does not earn fees from the Mirror Protocol (*id.* 7).  And the SEC's own discussions of Mr. Kwon's statements relating to the Mirror Protocol make clear that it was not directed at U.S. assets or investors.  SEC Br. 12–13 (quoting Mr. Kwon describing the Mirror Protocol in terms of "any asset class in the world").[9]  For these reasons and those discussed below, even if the Court reviews jurisdiction under the test proposed by the SEC (SEC Br. 31), it should find that the SEC has failed to carry its burden.

---

[9]    Although the SEC did not produce transcripts of the hours of YouTube videos it relied on in the District Court or this Court, the snippets the SEC cherry-picked (SEC Br. 12 & 33 n.27) must be reviewed in context.  Those videos barely touched on the Mirror Protocol and did not "promote" it.

14

## A.     U.S. Securities Law Does Not Apply Outside the U.S.

The SEC's arguments make it necessary to note that the federal securities laws apply only to transactions in securities listed on U.S. exchanges and domestic transactions in other securities.  *See Morrison*, 561 U.S. at 267; *Anderson v. Binance*, No. 20-cv-2803, 2022 WL 976824, at *4 (S.D.N.Y Mar. 31, 2022).  Having a website in English that is accessible in the U.S., or U.S. employees, having U.S. job postings, or even that U.S. persons might have purchased tokens, are not sufficient to allege that an entity is required to register with the SEC as an exchange.  *See id*.  The SEC would thus likely have difficulty establishing that mAssets could be subject to federal securities laws:  Although mAssets can *track* the price of any asset class in the world, they are not listed or traded on any U.S. exchange (nor has the SEC asserted otherwise), and so the federal securities laws likely would not apply to them.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014).  The strong possibility that the SEC will not even be able to establish that its regulatory authority extends to the Mirror Protocol under *Morrison* is crucial to consideration of its personal jurisdiction arguments, especially given its assertion that it has a lower burden to establish personal jurisdiction.

### B.    Mr. Kwon's Mere Presence In New York Is Irrelevant

The SEC argues that Mr. Kwon's mere presence in New York means that it need show no more for jurisdictional purposes. But *In re Edelman*, 295 F.3d 171, 173 (2d Cir. 2002), concerned a subpoena served in the U.S. by foreign plaintiffs seeking to secure deposition testimony for use in a private securities litigation in France pursuant to a specific statute (28 U.S.C. § 1782) designed to facilitate discovery for use in foreign proceedings. It was not an effort by a U.S. regulator to investigate a software company's involvement in the creation of a decentralized finance protocol that was not developed in the U.S. and is not based in the U.S., but incidentally permits users anywhere in the world to create and trade mAssets that track any asset class in the world. This is especially important because Section 1782 is a discovery statute and specifically contains "is found" language with respect to its potential targets. *See* 295 F.3d at 179. The lack of extraterritorial applicability of U.S. securities laws makes *Edelman* (which is about a statute specifically designed to assist foreign proceedings) a poor case to rely on. *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991), has even less to do with the issues here, as that case was not about a foreign party and the basis for the decision on personal jurisdiction was that the objecting party had waived the defense. That is not this case.

## C.     The SEC Did Not Establish Minimum Contacts

As an initial matter, the SEC's attempts to establish personal jurisdiction must be viewed through the lens of whether it can even establish that it can assert that the U.S. securities laws apply to the Mirror Protocol.  *Compare Morrison*, 561 U.S. at 267 (federal securities laws apply only to transactions in securities listed on U.S. exchanges and domestic transactions in other securities), *with* SEC Br. 39 ("mAssets could have a significant effect on American companies, exchanges, and investors, so that there is a national interest in exercising jurisdiction").

Most of the cases the SEC cites (SEC Br. 36-38) did not consider that issue. Indeed, many of them could not have, because they were decided before *Morrison* was decided.  *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002), is a good example of why this matters:  The SEC cites *Pinker* because the ADRs in that case "were not listed on American exchanges," which it believes supports jurisdiction here (SEC Br. 39).  But Roche had sponsored an ADR facility to allow U.S. investors to trade ADRs in the OTC market, and it was *that* conduct that the Third Circuit found sufficient to support personal jurisdiction.  *See* 292 F.3d at 171–72.  Such conduct would likely be found suitably domestic under *Morrison*.[10]

---

10     The SEC's assertion (SEC Br. 36 n.30) that mAssets are similar to the ADRs at issue in *Pinker* is unsupported.  As discussed in more detail in *Pinker*, Roche sponsored its ADR program by depositing stock with a custodian to allow U.S. investors to trade the ADRs.  That is not how mAssets work—

And in *Harrington Global Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, No. 21 Civ. 761, 2022 WL 409089, at *4 (S.D.N.Y. Feb. 9, 2022), there were allegations that certain defendants executed trades on U.S. exchanges, and the Court found that conduct sufficient for both personal jurisdiction and *Morrison* purposes.

The SEC does not assert any similar conduct here. And Judge Hellerstein held that activities similar to the assertions here (worldwide marketing not specifically targeted to the U.S. or U.S. investors) were insufficient to establish personal jurisdiction. *See Holsworth v. BPROTOCOL Foundation*, No. 20 Civ. 2810, 2021 WL 706549, at *2–3 (Feb. 22, 2021). The SEC has asserted that activities relating to the Mirror Protocol were directed at the U.S. and U.S. investors (SEC Br. 33–34), but has not provided evidence that anything related to the Mirror Protocol was targeted at the U.S. or U.S. investors.

In this sense it is important to distinguish the Mirror Protocol from TFL. Although TFL created the Mirror Protocol, the SEC does not dispute that TFL does not control the Mirror Protocol or what mAssets users choose to create or not create. Nor does the SEC dispute that TFL has created many other products

---

there is no underlying position in whatever asset class Mirror Protocol users choose to mirror. Whereas an ADR gives its owner an interest in an actual foreign stock, an mAsset does not.

18

separate from the Mirror Protocol.  It is telling that the SEC begins with the argument that Appellants "attempt[ed] to serve a worldwide market indirectly targeting the United States" (SEC Br. 35), an implicit concession that Appellants' activities were not directed at the U.S.

The cases the SEC relies on for its argument that "[m]any courts addressing digital asset and securities companies have exercised jurisdiction because of such targeting of U.S. consumers" (SEC Br. 35) are distinguishable.  In *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 350-51 (S.D.N.Y. 2019), ATBCOIN was based in New York City and so was one of its two sole members.  In *Owen v. Elastos Foundation*, No. 19-cv-5462-GHW, 2021 WL 5868171, at *8 (S.D.N.Y. Dec. 9, 2021), the defendants conceded personal jurisdiction over the Elastos Foundation itself and one individual defendant, and the allegations were that the Elastos foundation had a direct corporate presence in the U.S. and that both individuals lived in the U.S. at the relevant times.  In *SEC v. PlexCorps*, No. 17-CV-7007, 2018 WL 4299983, at *4–7 (E.D.N.Y. Aug. 9, 2018), the company and individual defendants set up multiple payment processors and web sites in the U.S., and the SEC presented evidence that the defendants knew they were selling tokens to U.S. investors.  None of the activities present in these cases has been alleged here, nor could they be, because mAssets are created by users of the Mirror

Protocol (not Appellants), are traded through decentralized markets not localized in the U.S., and Appellants receive no revenue from the Mirror Protocol.

With respect to the sports franchise agreement the District Court considered, the SEC attempts to excuse its belated effort to raise it by arguing that it learned about the agreement after briefing was completed and made clear that it only knew what was in the press. (SEC Br. 42 & n.34) But that confirms that the press reports the SEC referred to and the one the District Court relied on were hearsay and should not have been relied on. In addition, the citation to the governance proposal confirms that Appellants are correct that the sponsorship is unrelated to the Mirror Protocol. Although the governance proposal was made to the community by Mr. Kwon, it does not mention or relate to the Mirror Protocol at all, and makes clear that the arrangement is on behalf of the Terra community. *See* https://agora.terra.money/t/community-funding-proposal-for-redacted-sports-partnership/3962 (last visited April 5, 2022). The SEC's response—which of course is raised for the first time in this Court—is to compare this deal to signage for companies like Coca-Cola or Budweiser (SEC Br. 42–44 & nn.35–36), for which there is no evidence in the record other than the SEC's *ipse dixit*.

*          *          *

For the reasons set forth here and in the Opening Brief, the District Court erred in finding personal jurisdiction.

20

## CONCLUSION

For all the foregoing reasons and those set forth in Appellants' Opening Brief, this Court should reverse the District Court's order and remand with the directions requested in Appellants' Opening Brief. The SEC's request that if this Court vacates the District Court's decision, it should allow the District Court to address the proper remedy (SEC Br. 44 n.37) is inconsistent with *FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980), which decided the appropriate remedy and directed the district court what to do on remand. The SEC cites no authority for its request at all, let alone authority inconsistent with *Compagnie De Saint-Gobain-Pont-a-Mousson*.

Respectfully submitted,

Douglas W. Henkin
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone (212) 768-6832
Fax (212) 768-6800

*Counsel for Respondents-Appellants Terraform Labs PTE, Ltd. and Do Kwon*

21

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 5,077 words, excluding the portions of the brief exempted by Rule 32(f), according to the count of Microsoft Word.

I further certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5) – (6) because it is printed in a proportionally spaced 14-point font, Times New Roman.

*/s/ Douglas W. Henkin*
Douglas W. Henkin
*Counsel for Respondents-Appellants*

## CERTIFICATE OF SERVICE

On this 5th day of April, 2022 a true and correct copy of the foregoing was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Second Circuit, which currently provides electronic service on the counsel of record.

*/s/ Douglas W. Henkin*
Douglas W. Henkin
*Counsel for Respondents-Appellants*